MARILYN A. WINN, PERSONAL REPRESENTATIVE OF THE ESTATE OF LARRY D. WINN, DECEASED, APPELLANT, v. GEO. A. HORMEL & CO., APPELLEE.

560 N.W.2d 143

Filed March 14, 1997.   No. S-95-416.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf & Boggy, for appellant.

James L. Quinlan and John J. McCarthy, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

Marilyn A. Winn, widow of Larry D. Winn (decedent), petitioned the Nebraska Workers' Compensation Court for benefits because of the decedent's sudden cardiac arrest and death while he was at work at the Geo. A. Hormel & Co. (Hormel) plant in Fremont, Nebraska. Winn alleged that the decedent's death was caused by the Hormel plant nurse's failure to timely diagnose and treat the decedent's symptoms of a heart attack. Following a trial, a single judge of the compensation court dismissed Winn's petition, finding that although the decedent suffered a fatal heart attack while on his employer's premises and during the hours of his employment, the heart attack was not an accident which arose out of and in the course of his employment with Hormel within the meaning of Neb. Rev. Stat. § 48-101 (Reissue 1993). The trial court further found that the term "accident," as defined in the Nebraska Workers' Compensation Act, does not include any omission by the plant nurse with respect to treatment of an accident and injury that has already occurred. A review panel of the compensation court affirmed the trial court's order of dismissal. This appeal follows.

We note that Winn initially filed a cause of action in the district court for Dodge County, alleging common-law negligence on the part of Hormel, by and through its employee-plant nurse for failure to timely diagnose and treat the decedent's symptoms of a heart attack. The district court sustained Hormel's demurrer and dismissed the suit, finding Winn's exclusive remedy to be workers' compensation. Winn appealed the district court's dismissal order, and the disposition of that appeal is pending our determination in the present case.

Thus, the posture of the instant case requires us to decide whether the nurse's alleged negligent medical treatment was an "accident," as defined in Neb. Rev. Stat. § 48-151(2) (Reissue 1993), that caused or contributed to the decedent's death, such

that Winn's exclusive remedy is under the Nebraska Workers' Compensation Act. Because we conclude that negligent medical treatment, at an employer's first-aid medical facility, by a trained and qualified professional upon a coemployee may constitute an "accident" upon proof and a finding of such facts, we reverse the compensation court's judgment of dismissal and remand the cause to the compensation court for specific findings of fact in light of our holding.

## FACTUAL BACKGROUND

The decedent, Larry Winn, was a longtime employee of Hormel at its hog processing plant in Fremont. On the date of his death, the decedent's shift at Hormel began at 4 a.m., with a lunch break from approximately 10 to 10:36 a.m. After his lunch break, at about 11:30 a.m., the decedent began experiencing symptoms of what he thought was indigestion. The decedent sought treatment from the plant nurse, Lucy Klocke.

At about 11:30 a.m., after attending to another patient at the decedent's insistence, Klocke questioned the decedent about his symptoms. The decedent told Klocke that he thought he had indigestion and reported that he was experiencing chest pressure and aching in his arms. Klocke took the decedent's blood pressure and found it to be higher than normal. However, Klocke found the decedent's respiration and heart rates to be near normal. Klocke said that while in her office, the decedent did not seem to be in distress and that during this time, the decedent conversed normally with other coworkers.

Klocke testified that she told the decedent he was suffering from angina and heart problems, and should contact his doctor. Klocke said she offered to contact the security guards and have them take the decedent to the hospital emergency room. Klocke stated that the decedent refused her offer and instead chose to rest in her office. After about 15 minutes, Klocke again checked the decedent's blood pressure, respiration rate, and pulse rate. Although the decedent's blood pressure was still higher than normal, it had decreased from its former reading. Klocke testified that at approximately 11:50 a.m., the decedent elected to return to work and left her office.

At 11:55 a.m., the decedent was found in the smokehouse, collapsed face down in a caustic soda solution that he had been

draining from a tank. Klocke was summoned to the scene and immediately began cardiopulmonary resuscitation on the decedent. The Fremont rescue squad was called, and when it arrived a short time later, emergency medical technicians relieved Klocke and continued resuscitation efforts on the decedent.

Because the decedent had collapsed onto a metal walkway and was lying in a pool of caustic soda liquid, the medical technicians were unable to use their defibrillation equipment to resuscitate him. According to one of the medical technicians, the best course of treatment was to transport the decedent to the hospital emergency room. Upon arrival at the emergency room, the attending physician decided that the decedent had been without a pulse for too long and could not be revived. Thus, the physician did not initiate defibrillation and pronounced the decedent dead.

At the hearing before the single judge, Winn's nursing expert testified that Klocke's care of the decedent was violative of the standard of care for a professional registered nurse. Winn's cardiology expert, Dr. George Sojka, testified that based upon the record, the decedent was suffering a myocardial infarction while he was in the nurse's office and this myocardial infarction precipitated the subsequent cardiac dysrhythmia which resulted in his death. Dr. Sojka stated that the symptoms presented by the decedent to Klocke were the classic symptoms of a heart attack. Dr. Sojka testified that Klocke should have had the decedent stay in her office and should have immediately called the rescue squad or the decedent's physician. Dr. Sojka opined that the decedent's heart attack would have been survivable had he received immediate treatment. Dr. Sojka estimated the decedent's chances for survival at 80 to 90 percent had he received cardiac care prior to the onset of the dysrhythmia. It was Dr. Sojka's opinion that Klocke's failure to call the decedent's physician or the rescue squad immediately upon diagnosing the decedent's heart involvement contributed significantly to his death.

Hormel's cardiology expert, Dr. Thomas Sears, essentially agreed with Winn's expert that the decedent's death resulted from a myocardial infarction followed by dysrhythmia and circulatory arrest and that in all likelihood, it was a recoverable

infarction. However, Dr. Sears was critical of the care that the decedent received from the emergency medical technicians and the emergency room physician. A nursing expert testified, on behalf of Hormel, that Klocke met or exceeded the appropriate standard of care for an occupational health nurse because she was still assessing the decedent when he suffered his cardiac arrest and that Klocke was under no duty to persuade the decedent to stay in the nurse's office or to call a physician or the rescue squad.

In its order of dismissal, the trial court found that (1) Winn's evidence was insufficient to establish legal cause because no evidence was adduced indicating the decedent's heart attack was caused by a stress or exertion greater than what the decedent or any other person would have experienced in ordinary nonemployment and (2) the decedent's heart attack was not an accident which arose out of and in the course of his employment with Hormel.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997); *Phillips v. Monroe Auto Equip. Co.*, 251 Neb. 585, 558 N.W.2d 799 (1997). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996).

Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Kerkman v.*

*Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Cords v. City of Lincoln, supra.*

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996).

## ASSIGNMENTS OF ERROR

Summarized and restated, Winn's 15 assigned errors essentially contend that the compensation court erred in (1) determining that the term "accident," as defined in § 48-151(2) and as used in § 48-101, does not include " 'any omission on the part of a co-employee with respect to treatment of an accident and injury that has already occurred' "; (2) failing to consider that the "accident" in the instant case was the plant nurse's failure to timely diagnose and treat the decedent's symptoms of a heart attack; and (3) sustaining certain objections raised in the depositions of the expert witnesses. The disposition of this case requires that we review only Winn's first two assigned errors.

## ANALYSIS

Winn first asserts that she was effectively precluded from pursuing her theory of liability because the trial court failed to acknowledge the basis of her claim—that the decedent's injury was his death, and the "accident" which caused this injury was both the negligent nursing care provided by Hormel's employee and the inability of the emergency medical technicians to defibrillate and resuscitate the decedent, occasioned by the conditions of his employment. Winn contends that this is not the typical workers' compensation heart attack case, where the claimant's burden is to show that exertion or stress in his employment contributed in some material and substantial degree to cause the heart injury. See, e.g., *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995).

The dispositive issue in this appeal is whether negligent medical treatment by a trained medical employee upon a coemployee can itself be an "accident," as defined in § 48-151(2). More specifically, the issue is whether a medical employee's negligent failure to diagnose or treat a coemployee's medical condition, regardless of the source of the illness or injury, can

be considered an "accident" if there is a sufficient causal connection between the negligence and the death or disability for which compensation is sought. If our answer is in the affirmative, then Winn's exclusive remedy is under the Nebraska Workers' Compensation Act, and the compensation court would be obligated to make further findings of fact determining whether (1) the plant nurse contributed to the decedent's death with negligent medical treatment and (2) the element of causation has been satisfied in the instant case.

The following colloquy, after a relevancy objection early in the trial, is illustrative of the separate paths taken by Winn and the trial court regarding this crucial issue.

[WINN'S COUNSEL]: Your Honor, this whole case is based upon a delay of recognizing symptoms and a delay in treatment and a delay that caused death.

[TRIAL] COURT: I understand that, and I've tried to explain to you in my estimation, a review court or review panel of this court or Court of Appeal or Supreme Court may tell me I'm in error, but in my estimation it is not germane.

. . . .

[TRIAL] COURT: . . . [M]y point is whether there's a nurse, whether there's negligence on the part of the employee, whether there's negligence on the part of the employer or an employee is not germane to this issue. The question is did he have a heart attack, what caused the heart attack, did the heart attack cause his death.

[WINN'S COUNSEL]: No, Your Honor, that is not the — what this case is about at all.

[TRIAL] COURT: I understand that we disagree on that, but I've sustained the objection.

Under the provisions of the Nebraska Workers' Compensation Act, compensation is allowed when personal injury is caused to an employee by an accident or occupational disease, arising out of and in the course of his or her employment, if the employee was not willfully negligent at the time of receiving such injury. § 48-101.

Under § 48-151(2), an accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or

without human fault, and producing at the time objective symptoms of an injury." The "unexpected or unforeseen" requirement of § 48-151(2) is satisfied if either the cause was of an accidental character or the effect was unexpected or unforeseen. *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992).

The second specification of § 48-151(2) requires that an employee's injury must occur "suddenly and violently" to be compensable. This court has held that "suddenly and violently" does not mean instantaneously and with force. The specification of "suddenly and violently" is satisfied if the injury occurs at an identifiable point in time, requiring the employee to discontinue employment and seek medical treatment. *Schlup v. Auburn Needleworks, supra.* See, also, *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). We recognized in *Sandel* that the nature of the human body being such as it is, not all injuries to the body are caused instantaneously and with force, but may indeed nevertheless occur suddenly and violently, even though they have been building up for a considerable period of time and do not manifest themselves until they cause the employee to be unable to continue his or her employment.

Winn claims that the compensation court erred by not analyzing the term "accident" in its correct perspective. We agree. Hormel maintained an emergency first-aid medical facility for the convenience and welfare of its employees. The facility was staffed by a nurse, and care was provided to all employees regardless of the source of their illness or injury. During working hours, the decedent suffered physical distress and went to the nursing office for aid. The visit to Hormel's nursing office certainly is incidental to and arose out of the decedent's employment; i.e., the decedent's contact with Klocke was at a nursing office to which only employees are admitted, and, furthermore, the decedent would not have been examined by Klocke unless he was an employee of Hormel, as was Klocke. See *Dixon v. Ford Motor Co.*, 53 Cal. App. 3d 499, 125 Cal. Rptr. 872 (1975).

We determine that when an employer provides an emergency first-aid medical facility staffed by a licensed medical professional, the employer, by and through its licensed professional employee, owes a duty of reasonable care to those employees

that present themselves for emergency medical services at the place of employment. See *Critchfield v. McNamara*, 248 Neb. 39, 532 N.W.2d 287 (1995). This duty of reasonable care is owed to each employee regardless of the source of illness or injury, since healthy workers are of benefit to both the employer and all employees. See *Dixon v. Ford Motor Co., supra.*

The evidence suggests that the decedent was suffering a myocardial infarction while he was first in the nurse's office. However, the injury which is the basis of the instant claim is not the initial myocardial infarction, but, rather, the subsequent cardiac dysrhythmia and circulatory arrest which resulted in the decedent's death.

Certainly, the decedent's cardiac arrest 5 minutes after the decedent had departed from the nursing office was unexpected and unforeseen to both Klocke and the decedent. Further, the cardiac arrest clearly occurred at an identifiable point in time which would have required the decedent to discontinue employment and seek medical treatment had he survived. See *Schlup v. Auburn Needleworks, supra.* The trial court erred when it characterized the alleged negligence of Klocke as an "omission on the part of a co-employee with respect to treatment of an accident and injury that has *already occurred.*" (Emphasis supplied.) The "accident" allegedly occurred when Klocke failed to timely diagnose and treat the decedent's symptoms of a heart attack which, in turn, aggravated, accelerated, or combined with the preexisting heart condition to produce the death for which compensation is sought.

Winn produced evidence, if believed by the trier of fact, that (1) the symptoms presented by the decedent to Klocke were the classic symptoms of a heart attack recognizable by registered nurses, (2) Klocke's treatment fell below the standard of care when she did not have the decedent stay in her office and immediately call the rescue squad or the decedent's physician, and (3) the decedent's initial heart attack would have been survivable had he received timely medical treatment.

We hold that negligent medical treatment, at an employer's first-aid medical facility, by a trained and qualified professional upon a coemployee, may constitute an "accident" as defined in § 48-151(2) upon proof and a finding of such facts. However, in

view of the conflicting medical evidence regarding the effect of Klocke's actions, our holding does not conclusively establish that Winn has met the requisite burden of persuasion in this case.

To recover compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). Further, in a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. Such claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted. *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). Thus, the compensation court shall be obligated to make further findings of fact to determine whether (1) Klocke contributed to the decedent's death with negligent medical treatment and (2) the element of causation has been satisfied in the instant case.

## CONCLUSION

Because the compensation court erroneously concluded that the term "accident," as defined in § 48-151(2), did not include alleged negligent acts by Hormel's nurse in timely diagnosing and treating the decedent's symptoms of a heart attack, the findings of fact made by the trial court are insufficient to support the order of dismissal in the instant case. Accordingly, we vacate the compensation court's judgment of dismissal and remand the cause to the compensation court with the direction that the judge conducting the initial hearing make new findings of fact and enter an order consistent with those findings on the evidence adduced, and for such further review thereof as the parties may institute under law.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.