LINDA HAAKE, APPELLANT AND CROSS-APPELLEE, V. AMERICAN
TOOL COMPANIES, INC., APPELLEE AND CROSS-APPELLANT.

588 N.W.2d 839

Filed January 19, 1999.    No. A-98-461.

Tony J. Brock, of Harris Law Offices, for appellant.

Walter E. Zink II, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HANNON and INBODY, Judges, and BLUE, District Judge, Retired.

INBODY, Judge.

In this workers' compensation case, the single judge awarded Linda Haake waiting-time penalties and attorney fees pursuant

to Neb. Rev. Stat. § 48-125 (Reissue 1998), but the Workers' Compensation Court review panel reversed that award. Finding that the award of waiting-time penalties and attorney fees was appropriate, we reverse that portion of the order by the review panel.

## STATEMENT OF FACTS

On Tuesday, October 29, 1996, Haake was working for American Tool Companies, Inc. (American Tool), a manufacturer of Vise-Grips. On that date, Haake's supervisor told her to use a large hammer to pound Vise-Grips so that they would fit on a grinding machine. After several hours, Haake began to feel discomfort in her right forearm. She reported this pain to the "first-aid lady" and was given a "band" to wear on her arm. Haake returned to work on Wednesday and again used the large hammer. She reports the pain worsened, and she began feeling the pain in her back. She worked the following Thursday and Friday, still in pain.

Haake was not scheduled to work over the weekend and did not do so. She reports that on Sunday, she worked briefly in her flower garden, although her back was still hurting. According to Haake, that task was not arduous, and she did not experience any worsening of her pain at that time. However, later that day, her husband found her in severe pain and called an ambulance. She was taken to Beatrice Community Hospital & Health Center's emergency room and examined by Dr. Walter Gardner, who diagnosed "[r]ight sacral ileitis." In his note, Dr. Gardner reported that Haake had suffered back discomfort while "pulling some weeds" and also noted that Haake "reports having a history of back discomfort." Dr. Gardner's report made no specific mention of Haake's back pain at work.

Haake did not report for work the following Monday, November 4, 1996. On that date, she sought treatment from her family physician, Dr. Duane Koenig. On November 6, Dr. Koenig filled out a "Work Related Injury Data" form provided by American Tool, listing the date of injury as October 30, describing the injury as "Back Pain - Sprain - Spasm [sic]," and advising that Haake would not be able to work until her symptoms resolved. Dr. Koenig filled out another of these forms on November 8, stating that he had "[f]ollowed up with orthopedic

consult & then anesthesiologist for regional blocks — treatment of pain." Also on November 8, Haake was examined by Dr. Mark Zeiler of the Beatrice Community Hospital & Health Center, who diagnosed sacral ileitis secondary to an acute sprain.

Dr. Koenig filled out additional "Work Related Injury Data" forms on November 18, 22, and 26, 1996, and December 6. The record does not show whether these forms, collectively introduced at trial as exhibit 4, were received by American Tool prior to trial.

On December 12, 1996, Independent Claims Management Services (ICMS), the third-party administrator for American Tool's self-insured workers' compensation program, advised Haake by letter that her workers' compensation claim was denied because her "injury was exacerbated by an off the job incident." On December 17, Jerry Motz, claims manager for ICMS, sent Haake another letter, advising her that he had discussed her claim with Dr. Zeiler and that ICMS still believed that the claim was noncompensable. On December 31, American Tool advised Dr. Koenig by letter that its insurer had denied Haake's workers' compensation claim and that "[h]er loss of work time is being handled through the weekly disability insurance."

The record also includes exhibit 9, a two-page form on American Tool letterhead, captioned "Statement for Disability Income Claim." This form has sections to be completed by the claimant, by the claimant's attending physician, and by American Tool. Haake testified that she submitted that form to American Tool after she and her husband had completed her section and after Dr. Koenig had filled in the attending physician section. Although Haake did not testify as to the date on which she returned the form to American Tool, American Tool's section is signed with a date of January 10, 1997, and a stamp appears on the top with the notation "RECD JAN 10 1997." On that form, Dr. Koenig described Haake's condition as a back injury, specifically as "Back Pain, Sprain, Spasm." In her portion, Haake indicated, by the appropriate checkmarks, that her injury was work related and that she intended to file a claim for workers' compensation benefits.

On March 21, 1997, Haake filed suit in the Workers' Compensation Court, alleging a work-related injury and seeking an award of waiting-time penalties and attorney fees. American Tool denied that Haake had suffered a compensable injury. A trial was had on August 28.

## FINDINGS AND HOLDINGS
## OF COURTS BELOW

The Workers' Compensation Court single judge found that Haake had suffered an acute lumbar strain during the scope and course of her employment, and awarded her temporary total disability benefits of $261.32 per week for 6 2/7 weeks, beginning November 2, 1996, and ending on December 15, 1996. The single judge further found that no reasonable controversy existed as to Haake's entitlement to workers' compensation benefits and that American Tool had wrongfully refused to pay indemnity benefits and medical expenses. The single judge accordingly awarded Haake waiting-time penalties in the amount of $130.61 per week for 6 2/7 weeks and further awarded her attorney fees in the amount of $1,920, plus interest. That attorney fees award was later amended, in an order nunc pro tunc, to $1,820.

American Tool sought further review on the issue of attorney fees and waiting-time penalties. The review panel reversed the award of waiting-time penalties and attorney fees, but otherwise affirmed.

## ASSIGNMENTS OF ERROR

Haake's assignment of error, restated and summarized, is that the Workers' Compensation Court review panel erred in concluding that a reasonable controversy existed as to her entitlement to benefits and in accordingly reversing the single judge's award of waiting-time penalty, interest, and attorney fees.

In its cross-appeal, American Tool asserts that the single judge erred in awarding waiting-time penalties, interest, and attorney fees and in failing to provide the parties with a reasoned decision. American Tool further asserts that the award by the single judge was contrary to law and not supported by the facts.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997); Neb. Rev. Stat. § 48-185 (Reissue 1998).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997).

Upon appellate review, the findings of fact made by the single judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995). However, an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Winn v. Geo. A. Hormel & Co., supra.*

## ANALYSIS

*Haake's Appeal.*

In her appeal, Haake argues that the review panel erred in reversing that portion of the single judge's award which granted her waiting-time penalties and attorney fees. At issue is § 48-125, which provides in relevant part:

> Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay medical payments subject to such section after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

The Nebraska Supreme Court has construed § 48-125 to mean that an employer who delays or refuses payment of compensation benefits risks the imposition of sanctions unless that employer can convince the Workers' Compensation Court that a *reasonable controversy* existed regarding the employee's claim. See, *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1998); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). A reasonable controversy exists, in this context, if there is either a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or if the properly adduced evidence would support reasonable but opposite conclusions by the Workers' Compensation Court, conclusions which would affect allowance or rejection of an employee's claim, in whole or part. See *Mendoza v. Omaha Meat Processors, supra.* "[T]he only legitimate excuse for delay in the payment of compensation benefits is the existence of a genuine dispute from a medical or legal standpoint that any liability exists." *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. at 708, 572 N.W.2d at 789.

There is no issue as to whether the evidence properly adduced at trial led to the conclusion that Haake was entitled to workers' compensation benefits. In his award, the single judge found that "[a]fter seeing the plaintiff in court and a review of the records, I cannot believe that any judge on this court would find for the defendant." The review panel agreed, explaining:

> There are 32 exhibits. The Court has examined those 32 exhibits in vain for any opinion that amounts to more than speculation that the plaintiff's back injury was the product of an accident other than the one found by [the single judge] to have occurred on October 30, 1996.

However, the single judge and the review panel came to opposite conclusions regarding imposition of sanctions. The single judge held that the evidence was such that American Tool should have realized that no reasonable controversy existed and should therefore have paid benefits prior to trial. The review panel disagreed, holding that before sanctions could be imposed pursuant to § 48-125, the claimant "has an obligation to prove

that there was provided to the employer or its insurer, directly or through its attorney, medical opinion establishing a causal connection between the accident and the injury and the disability in cases in which the injury is not objective." The review panel held that the "only materials which [the single judge] could have inferred were received by the defendant prior to the time of hearing were pages 3 through 6 of exhibit 4 and exhibit 9." The review panel held that those exhibits were not sufficient to establish causation and concluded that

> because the plaintiff has failed to prove that she communicated to the defendant prior to the time of trial expert opinion with respect to the cause of her injury and temporary disability, [the single judge] was clearly wrong in awarding additional compensation for waiting time, an attorney's fee, and interest . . . .

The issue before us is whether an employer may claim that a reasonable controversy exists, excusing prompt payment of workers' compensation benefits, on the ground that it has not been presented with documentation that definitively establishes the injured employee's right to compensation. Resolution of this issue involves further construction of the reasonable controversy rule as set out in *Mendoza v. Omaha Meat Processors, supra.*

Statutory construction presents a question of law, *County of Seward v. Andelt*, 251 Neb. 713, 559 N.W.2d 465 (1997), and in undertaking such construction, a higher appellate court is obligated to make its own determinations, independent of those by the Workers' Compensation Court, *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997). In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996).

It has long been established that the "policy of liberal construction of the [Nebraska Workers'] Compensation Act for the benefit of the claimant is . . . the rule in Nebraska." *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 290, 307 N.W.2d 514, 519 (1981). Section 48-125 is intended to place the burden and risk

of delayed payments solely on the employer. See *Gaston v. Appleton Elec. Co.*, 253 Neb. 897, 902, 573 N.W.2d 131, 135 (1998) ("purpose of the 30-day waiting-time penalty and the provision for attorney fees in § 48-125 is to encourage prompt payment by making delay costly if the award has been finally established").

> This provision for penalty was placed in the statute evidently with the object, not only to induce prompt payments after the award has been finally established, but, in case the award is contested, to compel prompt action on the part of the defendant in making his defense, and to defeat frivolous delays and chronic procrastinations often occurring in the course of legal proceedings; and, when any of these conditions are found to exist, the penalty should be promptly imposed.

*McCrary v. Wolff*, 109 Neb. 796, 803, 192 N.W. 237, 240 (1923).

It is also well established that an employer cannot avoid sanctions under § 48-125 merely because it suspects or believes a claim is unfounded. "If denial predicated on conjecture and speculation, or mere possibility asserted by an employer, creates a reasonable controversy within the meaning this court has ascribed to § 48-125, an employer's denial of a claim by an employee would necessarily and automatically include a reasonable controversy." *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 787, 408 N.W.2d 280, 290 (1987) (reversing review panel's reversal of single-judge award of waiting-time penalty and attorney fees).

The issue therefore narrows to whether, on the information provided it, American Tool had an actual basis for opposing Haake's claim. Obviously, ICMS had some medical information, as demonstrated by its referral to Dr. Zeiler in the December 17, 1996, letter to Haake. More importantly, it is uncontroverted that American Tool received exhibit 9—the application for disability benefits completed by Haake and her family physician—on or about January 10, 1997, well before trial. On that exhibit, Haake has checked the boxes indicating both that her injury was the result of her occupation and that she will file a claim for benefits. On that same form, Haake's fam-

ily physician described her condition as "Back Pain, Sprain, Spasm." Haake argues that this document is sufficient to put American Tool on notice that she has a potentially valid claim.

■ American Tool argues that exhibit 9 does not definitively establish causation and that lacking such evidence, a reasonable controversy existed as to the validity of Haake's claim, thus providing it an actual basis for delaying payment. We disagree. To construe § 48-125 as providing that an employer is liable for sanctions only if the injured employee has provided that employer with evidence sufficient to prevail at trial would improperly shift the burden of seeing that a claim is fully investigated, and of obtaining proper documentation, from the employer and its insurer and onto the injured employee. There would be no incentive for employers to promptly settle claims. Such a result is contrary to the intent of the statute.

We accordingly hold that no reasonable controversy existed regarding Haake's claim, that American Tool had no actual basis for refusing to pay workers' compensation benefits to Haake, and that the imposition of sanctions pursuant to § 48-125 was appropriate. We therefore reverse the decision of the review panel and remand the matter to the review panel with the direction that the award of waiting-time penalties and attorney fees be reinstated as set out in the award by the single judge.

*American Tool's Cross-Appeal.*

In its cross-appeal, American Tool asserts that the single judge erred, in fact and in law, when he awarded waiting-time penalties and attorney fees. For the reasons set forth above, it is clear that we find no error of fact or law by the single judge with regard to this issue. Accordingly, we hold that American Tool's cross-appeal is without merit.

## ATTORNEY FEES

Also before the court is a motion for attorney fees in the amount of $595, consisting of 7 hours of legal services, at a rate of $85 per hour, incurred in connection with the instant appeal. The motion is accompanied by an affidavit, pursuant to Neb. Ct. R. of Prac. 9F (rev. 1996).

The attorney fees provision of the Nebraska Workers' Compensation Act, § 48-125, provides, in pertinent part:

[I]f the employee files an application for a review before the compensation court from an award of a judge of the compensation court when the amount of compensation due is disputed and obtains an increase in the amount of such award, the compensation court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such review, and the Court of Appeals or Supreme Court may in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in the Court of Appeals or Supreme Court.

Because the result obtained by Haake will result in an increase in the amount of compensation due, we hold that she is entitled to attorney fees for the costs incurred in this appeal, pursuant to § 48-125. Having considered the affidavit, and the materiality and significance of the appeal, we award Haake $595 for attorney fees.

## CONCLUSION

For the reasons set forth above, we reverse the decision of the review panel and remand the matter to the review panel with the direction that the award of waiting-time penalties and attorney fees be reinstated as set out in the award by the single judge.

REVERSED AND REMANDED WITH DIRECTION.