MARY H. SHERIDAN, APPELLEE, V. CATERING MANAGEMENT, INC., DOING BUSINESS AS 1ST AVENUE BAR & GRILL, AND MILWAUKEE INSURANCE COMPANY, APPELLANTS.

566 N.W.2d 110

Filed July 11, 1997.   No. S-96-399.

Walter E. Zink II, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

Darrell K. Stock, of Snyder & Stock, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The Nebraska Workers' Compensation Court ruled that the plaintiff-appellee employee, Mary H. Sheridan, suffered permanent and total disability as the result of an accident arising out of and in the course of her employment with the defendant-appellant employer, Catering Management, Inc., doing business as 1st Avenue Bar & Grill, and ordered it and its insurer, the defendant-appellant Milwaukee Insurance Company, to pay benefits accordingly. Catering Management and Milwaukee Insurance, hereinafter collectively referred to as the "employer," appealed to the Nebraska Court of Appeals, which affirmed the award of the compensation court. See *Sheridan v. Catering Mgmt., Inc.*, 5 Neb. App. 305, 558 N.W.2d 319 (1997). The employer thereafter successfully petitioned this court for further review, asserting, in summary, that the Court of Appeals erred in ruling the evidence sufficient to support the award. We

now affirm the judgment of the Court of Appeals and award Sheridan an attorney fee.

## II. SCOPE OF REVIEW

Under the provisions of Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Winn v. Geo. A. Hormel & Co.*, ante p. 29, 560 N.W.2d 143 (1997); *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997). However, an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Winn, supra*; *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

## III. FACTS

Catering Management employed Sheridan as a bartender. Around 1:30 a.m. on Sunday, September 19, 1993, an exterminator treated the bar for cockroaches by spraying, dusting, and power-fogging with substances containing a number of chemicals, including esfenvalerate, which enter the insect through its skin. The exterminator left the bar around 4:30 a.m. and advised bar employees not to reenter for at least 4 hours after the fogging and to clean prior to serving customers.

Sheridan arrived at the premises around noon on September 19 and cleaned for 2½ hours to remove residue from the fogging. Without wearing any protective gloves, she removed the residue by dipping towels into a water bucket, wiping the surfaces, and then resoaking the cloth in the bucket. Sheridan worked the rest of that Sunday until about midnight and, while there, began experiencing a burning sensation in her eyes and throat, body aches, ringing in her ears, and nausea. The next day, Sheridan experienced soreness, paralysis, blurred vision, and seizures, and could barely talk. She was hospitalized on September 20. Sheridan claims that she experiences pain, phan-

tom itching which causes her to scratch until she breaks her skin, blurred and double vision, and memory loss; lacks patience with her children; and is of short temper.

Sheridan has seen a number of physicians, psychologists, and psychiatrists. Although there is a conflict in that evidence concerning the nature and extent of Sheridan's disability and its cause, there is evidence which, if admissible and believed by the trier of fact, supports a finding that Sheridan is permanently and totally disabled as the result of brain damage caused by the aforedescribed exposure to esfenvalerate, as more particularly set forth hereinafter.

## IV. ANALYSIS

The employer contends that the courts below erred as a matter of law by finding sufficient probative expert scientific evidence to establish a causal relationship between Sheridan's exposure to pesticides during her employment and her organic brain damage. That contention rests on the premise that, save for the opinion of a neurologist who wrongly thought Sheridan had been exposed to organophosphate poison, all of the medical evidence relating the cause of Sheridan's disability to her work exposure to the pesticides is dependent upon the opinion of Dr. Carol R. Angle in that regard.

For purposes of this analysis, we accept the employer's premise and therefore focus on Angle's testimony. Angle, a professor of pediatrics and director of clinical toxicology at the University of Nebraska Medical Center who holds a courtesy appointment in the department of psychology at the University of Nebraska at Omaha, saw Sheridan twice as a treating physician. She testified that esfenvalerate is a class II pyrethrin and a more toxic isomer of fenvalerate. While fenvalerate has been used for about 15 years, esfenvalerate is fairly new.

According to Angle, there are no clinical reports involving human exposure to esfenvalerate, and there are no anatomical or histopathologic studies for the human response to esfenvalerate. Angle stated that medicine has not been able to determine what the result of esfenvalerate exposure is on humans. While the current medical literature does not report any evidence of per-

manent organic brain injury in humans from class II pyrethrin exposure, neither does the literature exclude such a relationship.

No testing has been conducted to determine whether exposure to class II pyrethrins can cause organic memory loss or permanent human organic brain impairment. However, based on the experimental data, Angle would expect neurologic injury.

When Angle first saw Sheridan, she described her symptoms, which were consistent with "moderate acute poisoning." After performing a gross neurologic examination and ordering laboratory studies, Angle concluded that Sheridan suffered organic brain damage due to toxic encephalopathy resulting from the "exposure to esfenvalerate, pyrethrins, synergist and petroleum distillate on 9/19/93." Angle is also of the opinion that Sheridan has persistent symptoms and deficits and persistent evidence of organic brain damage.

There is no question that a workers' compensation claimant bears the burden to establish a causal relationship between the alleged injury and the employment. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). Moreover, to recover compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Winn v. Geo. A. Hormel & Co., ante* p. 29, 560 N.W.2d 143 (1997).

At the heart of the employer's position is the contention that the courts below erroneously concluded that *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), does not apply to cases arising under the Nebraska Workers' Compensation Act.

In this state, where the rules of evidence apply, the admissibility of an expert's testimony, including an opinion, which is based on a scientific principle or on a technique or process which utilizes or applies a scientific principle, depends on general acceptance of the principle, technique, or process in the relevant scientific community. Stated otherwise, this state adheres "to the *Frye* standard, under which the proponent of the evidence must prove general acceptance by surveying scientific publications, judicial decisions, or practical applications, or by presenting testimony from scientists as to the attitudes of their fellow scientists." *State v. Dean*, 246 Neb. 869, 882, 523

N.W.2d 681, 692 (1994), *cert. denied* 515 U.S. 1123, 115 S. Ct. 2279, 132 L. Ed. 2d 282 (1995). We have written that

> [o]ne of the primary objectives of this test is to shield jurors from misleading or prejudicial scientific testimony. This rationale is based on the concern that (1) lay jurors tend to be overly impressed by science, (2) lay jurors lack the capacity to evaluate such scientific evidence critically, and (3) lay jurors are likely to give unreliable scientific testimony more weight than it deserves. Another benefit of *Frye* is protecting the courts from unproven and potentially erroneous scientific theories until those theories have been appropriately subjected to scrutiny by experts from the relevant scientific community.

*State v. Carter*, 246 Neb. 953, 973, 524 N.W.2d 763, 777-78 (1994).

The employer argues that pursuant to *Dean, supra,* Sheridan must prove "general acceptance" through one of four ways: (1) scientific publications, (2) judicial decisions, (3) practical applications, or (4) testimony from scientists as to the attitudes of their fellow scientists. The employer further contends that the record lacks any foundational evidence for the admission of Angle's opinions regarding causation. According to the employer, Sheridan attempted, through Angle's testimony,

> to prove that the amounts of chemicals absorbed by [her] were sufficient to produce permanent brain injuries. Nowhere in the record is there any evidence of (3) practical applications or (4) that "fellow scientists" agree with the proposition that fenvelerates [sic], esfenvelerates [sic] or any other Class II pyrethrin or pyrethroid (the types of active chemicals to which [Sheridan] was exposed) will cause permanent injuries in humans.

Brief for appellants at 12. The employer also urges that Sheridan has failed to find any scientific publications or judicial decisions supporting Angle's view.

However, as a general matter, the Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence. Neb. Rev. Stat. § 48-168(1) (Reissue 1993); Neb. Rev. Stat. § 27-1101(4)(d) (Reissue 1995); *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545

N.W.2d 727 (1996); *Paulsen, supra.* Subject to the limits of constitutional due process, the Legislature has granted the compensation court the power to prescribe its own rules of evidence and related procedure. *Harpham v. General Cas. Co.*, 232 Neb. 568, 441 N.W.2d 600 (1989).

> The Nebraska Workers' Compensation Court shall not be bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act.

§ 48-168. "The Nebraska Workers' Compensation Court shall regulate and provide . . . the nature and extent of the proofs and evidence and the method of taking and furnishing the same for the establishment of the right to compensation." Neb. Rev. Stat. § 48-164 (Reissue 1993).

Although the evidentiary rules of the compensation court may not be more restrictive than those of trial courts, they may be less so. *Harpham, supra.* Thus, the compensation court is permitted to admit evidence which over proper objection could not be introduced in a state trial court. *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977). In short, subject to the limits of constitutional due process, the admission of evidence is within the discretion of the compensation court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Berggren, supra*; *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

Therefore, due process, not *Frye*, provides the standard for admitting expert scientific testimony in a workers' compensation trial. See *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991) (although Nebraska Evidence Rules are inapplicable to proceedings in Nebraska Workers' Compensation Court, due process requirements may control type of evidence in trial of workers' compensation case).

As to medical testimony:

> The witness must qualify as an expert, and the witness' testimony must assist the trier of fact to understand the

evidence or determine a fact in issue. The witness must have a factual basis for the opinion, and the testimony must be relevant.

A qualified expert may not testify without adequate basis for his or her opinions concerning the facts of the case on which the expert is testifying. Expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable the expert to express a reasonably accurate conclusion, and where the opinion is based on facts shown not to be true, the opinion lacks probative value. [Citation omitted.] The opinion must have a sufficient factual basis so that the opinion is not mere conjecture or guess. [Citation omitted.] Thus, a trial court may exclude an expert opinion because the expert is not qualified, because there is no proper foundation or factual basis for the opinion, because the testimony would not assist the trier of fact to understand the factual issue, or because the testimony is not relevant.

*Paulsen*, 249 Neb. at 123, 541 N.W.2d at 644.

Despite the foundational and relevancy requirements set out above, it is clear that federal due process does not require the proponent of the evidence to prove general acceptance, for in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court rejected *Frye*'s general acceptance test, ruling that Fed. R. Evid. 702 superseded it. If federal due process mandated the general acceptance test, the *Daubert* Court could not have ruled as it did. We see no reason to conclude that state due process requires more in this context than does federal due process.

## V. JUDGMENT

Being correct, the judgment of the Court of Appeals is, as first noted in part I above, affirmed. Sheridan is awarded the sum of $1,375 to apply toward the services of her attorney in this court.

AFFIRMED.