CATALINO VARELA, APPELLEE AND CROSS-APPELLANT, V.
FISHER ROOFING CO., INC., AND UNION INSURANCE COMPANY,
APPELLANTS AND CROSS-APPELLEES.

572 N.W. 2d 780

Filed January 2, 1998. No. S-96-1069.

Dallas D. Jones, Thomas B. Wood, and Darin J. Lang, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant Fisher Roofing Co.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WHITE, C.J.

Fisher Roofing Co., Inc., and its insurance carrier, Union Insurance Company, appeal an award to Fisher's employee, Catalino Varela, from a review panel of the Nebraska Workers' Compensation Court. The award arose out of a foot injury

Varela sustained while engaged in, or preparing to engage in, an arm-wrestling match with a coworker. The Nebraska Court of Appeals affirmed the award to Varela. We granted further review.

Varela was working as a laborer for Fisher on September 28, 1994, when he injured his right foot during working hours on a jobsite.

Varela and other crew members were on the roof of a school in Harrisburg, Nebraska, preparing to do work on the roof. Varela was carrying a bucket of paint when a coworker, Pastor "Tony" Gonzales, asked Varela why he chose to carry the lightest bucket. Upon hearing this, Varela put the bucket down and, in a good-natured manner, challenged Gonzales to an arm-wrestling match. Gonzales initially declined the challenge because he knew that such conduct was against Fisher's rules. Varela continued to challenge Gonzales to arm-wrestle, calling him "chicken." Gonzales apparently accepted the challenge, and as they either prepared to arm-wrestle or actually started, Varela put his right foot on the edge of a raised skylight. Varela's foot slipped off the skylight, causing him to fall and injure his right foot.

Fisher's employee handbook prohibits "[b]oisterous or disruptive activity in the workplace." Prior to the incident, Varela had signed an employee acknowledgment form which stated that he had received the handbook, which was written in English, and that he was responsible for reading it and following the policies contained therein. Varela does not read English.

On September 20, 1995, a hearing was held in the Nebraska Workers' Compensation Court. On December 28, the court found that Varela had suffered a compensable accident and was entitled to indemnity benefits and the payment of medical expenses. The court further found that Varela's injury occurred either during or in preparation for arm-wrestling, that Varela's act of engaging in arm-wrestling constituted a deviation from his employment, that Fisher's employee handbook specifically prohibited arm-wrestling, and that the arm-wrestling did not create a formidable independent hazard of injury.

Fisher and Union appealed the court's findings to a review panel of the Workers' Compensation Court, which found that

the trial court was not clearly wrong in finding that the injury arose out of and in the course of the employment.

Fisher and Union then appealed the review panel's decision to the Court of Appeals, generally asserting that the compensation court erred (1) in finding that Varela's injury occurred in an accident arising out of and in the course of his employment, (2) in not finding that the arm-wrestling constituted willful negligence on the part of Varela, and (3) in finding that the arm-wrestling did not create a formidable independent hazard of injury. Varela cross-appealed, alleging that the compensation court erred in failing to award attorney fees, interest, and costs.

The Court of Appeals affirmed the review panel's decisions to uphold the compensation award to Varela and to uphold the ruling that since there was a reasonable controversy, an award of attorney fees, interest, and costs was precluded. See *Varela v. Fisher Roofing Co.*, 5 Neb. App. 722, 567 N.W.2d 569 (1997). However, since Fisher and Union appealed to a review panel and did not obtain a reduction in the award and pursued a second appeal to the Court of Appeals, again without reduction, the Court of Appeals affirmed the $2,000 attorney fee awarded by the review panel and awarded Varela further attorney fees for the appeal in that court. *Id.* The case is now before this court for further review.

Fisher and Union claim that the Court of Appeals erred (1) in crafting a vague rule which provides that injuries occurring during "horseplay" may be compensable under the Nebraska Workers' Compensation Act; (2) in applying the analysis adopted in workplace assault cases such as *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 53 N.W.2d 203 (1952); (3) in affirming a finding that Varela suffered an accident on September 28, 1994, which arose out of and in the course of his employment with Fisher; (4) in concluding that a deviation from employment is compensable if its origin can be traced to employment; (5) in affirming a finding that Fisher is liable for temporary total disability benefits, permanent partial disability benefits, and medical expenses as a result of injuries sustained by Varela as a result of his act in arm-wrestling or preparing to arm-wrestle while on top of a roof on September 28; and (6) in affirming a finding that the arm-wrestling, or

preparation for arm-wrestling, in which Varela engaged and which caused his injury, did not constitute willful negligence.

Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997); *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Acosta v. Seedorf Masonry, Inc.,* ante p. 196, 569 N.W.2d 248 (1997); *Sheridan v. Catering Mgmt., Inc.*, 252 Neb. 825, 566 N.W.2d 110 (1997).

Under the provisions of the Nebraska Workers' Compensation Act, compensation is allowed when personal injury is caused to an employee by an accident or occupational disease arising out of and in the course of his or her employment, if the employee was not willfully negligent at the time of receiving such injury. Neb. Rev. Stat. § 48-101 (Reissue 1993); *Winn v. Geo. A. Hormel & Co., supra.*

Not only must a claimed prejudicial error be assigned, it also must be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *State v. Sommerfeld*, 251 Neb. 876, 560 N.W.2d 420 (1997); *Landmark Enterprises v. M.I. Harrisburg Assocs.*, 250 Neb. 882, 554 N.W.2d 119 (1996).

In their brief to this court, Fisher and Union do not argue that Varela's actions constitute willful negligence, and therefore that issue will not be considered here.

In their first assignment of error, Fisher and Union argue that the Court of Appeals erred in crafting a vague rule which provides that workplace injuries occurring during horseplay may be compensable under the Nebraska Workers' Compensation Act. Fisher and Union claim that "the Court of Appeals never made clear the actual 'test' it was adopting." Brief for appellants in support of petition for further review at 5-6.

The Court of Appeals characterized the arm-wrestling incident between Varela and Gonzales' as "horseplay" and found that "certain incidents of horseplay, resulting in injury, may be within the scope of employment and arise out of it." *Varela v.*

*Fisher Roofing Co.*, 5 Neb. App. 722, 732, 567 N.W.2d 569, 576 (1997). In holding that Varela's injury was compensable, the Court of Appeals adopted Professors Larson and Larson's theory that " 'horseplay participation . . . should have the benefit of the general rule that trifling and insubstantial deviations, which do not measurably detract from the work, should not be treated as departures from the scope of employment.' 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 23.66 at 5-233 (1996)." *Varela*, 5 Neb. App. at 732, 567 N.W.2d at 576. The court concluded that the arm-wrestling was an insubstantial deviation and did not measurably detract from the work. In affirming the compensation award to Varela, the Court of Appeals used the above-quoted language from 1A Larson & Larson, *supra*, § 23.66, as its test for compensability in cases involving workplace injuries as a result of horseplay. The test essentially states that injuries resulting from horseplay may be within the scope of employment; such injuries are within the scope of employment and compensable if (1) the deviation is insubstantial and (2) the deviation does not measurably detract from the work. In holding that Varela's injury was compensable, the Court of Appeals stated:

> We believe that Larson and Larson's proposed test for compensability is appropriate and that certain incidents of horseplay, resulting in injury, may be within the scope of employment and arise out of it. We look to whether the deviation was substantial because, obviously, Varela and Gonzales were not directly working when the injury occurred. We find that the work stoppage was of momentary duration, the injury happened at the very outset of the horseplay, this was not the sort of incident which carried a significant risk of serious injury, and the incident was a trifling matter, at least in its intention by the two employees. These factors lead to the conclusion that the arm-wrestling was an insubstantial deviation and did not measurably detract from the work (but for the injury).

*Varela*, 5 Neb. App. at 732, 567 N.W.2d at 576-77.

We concur in the rationale of 1A Larson & Larson, *supra*, as a standard in horseplay cases. We also agree with the Court of Appeals' analysis in concluding that the arm-wrestling incident

between Varela and Gonzales was an insubstantial deviation and did not measurably detract from the work. Accordingly, we hold that the Court of Appeals did not err in crafting a rule which allows compensation under the Nebraska Workers' Compensation Act for certain workplace injuries resulting from horseplay.

In their second assignment of error, Fisher and Union claim that the Court of Appeals erred as a matter of law in applying the analysis adopted in workplace assault cases such as *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 53 N.W.2d 203 (1952).

While there is no horseplay case in Nebraska, the Court of Appeals analogized the issue to cases involving assault injuries in the workplace. In doing so, the court relied on *Myszkowski, supra*, where difficulties in a work relationship between two employees escalated to the point where one employee assaulted the other. In finding the resulting injury compensable, we held: " 'Where the disagreement arises out of the employer's work in which two men are engaged and as a result of it one injures the other, it may be inferred that the injury arose out of the employment.' " *Id.* at 718, 53 N.W.2d at 207.

Fisher and Union assert that the instant case cannot be compared to workplace assault cases because of two distinctions: (1) There was no "dispute" in this case, and (2) in all compensable workplace assault cases, "the injury arose out of a spontaneous, unpremeditated 'explosion' or flaring of tempers." Further brief on appeal for appellants at 8. While there was no argument or dispute in the instant case, there was some good-natured teasing about whether Varela was carrying his share of the workload. This in turn led to the arm-wrestling challenge as a test of strength and manhood. We are inclined to agree with the Court of Appeals' assessment that "[a]ll of the evidence shows that their arm-wrestling match arose spontaneously out of work-related banter. It was an accidental slip during the course of this momentary horseplay which caused Varela's injury." *Varela*, 5 Neb. App. at 729, 567 N.W2d at 575.

Rather than relying on the rule in *Myszkowski, supra*, Fisher and Union urge that the proper test to determine compensation in this case is that espoused in *Simon v. Standard Oil Co.*, 150 Neb. 799, 36 N.W.2d 102 (1949). In *Simon*, the claimant

worked in the "wash room," which was next to the "paint room." After having completed all of his duties for the day, the claimant went about 30 feet from his station to the paint room, where a new ventilation fan had been installed. The claimant, in order to satisfy his curiosity as to how much air the fan was pulling, got his hand too close to the fan and was injured. In finding that the injury was not compensable, this court held that

> "the test to be applied to any act or conduct of an employee which does not constitute a direct performance of his work is whether it is reasonably incident thereto, or whether it is so substantial a deviation as to constitute a break in the employment and to create a formidable independent hazard."

*Id.* at 804, 36 N.W.2d at 105. We further held that an injury is compensable "when it takes place within the period of the employment, at a place where the employee has a right to be, and while he is engaged in performing the duties of the employment or something reasonably incidental thereto." *Id.* at 806, 36 N.W.2d at 106. We denied compensation in *Simon* because the accident was found not to be in the course of the claimant's employment, since (1) he had completed all of his work for that day and (2) he had no duty or obligation to be in the area of the fan.

While the general principles of the test in *Simon* may apply here, the instant case can be distinguished factually in that the claimant in *Simon* had finished his duties for the day and needed only to leave the premises. Instead, he relocated to an area where he had no concern, duty, or responsibility.

On oral argument, Fisher and Union assert that Varela had similarly relocated by moving toward the skylight and thus had deviated from his employment. However, the record indicates that Varela remained on the roof at the time of his injury, which is where he was required to be to perform the work he was doing. The record in the instant case also shows that Varela was engaged in horseplay during working hours while preparing to do roofing work. It does not appear that Varela relocated from his work station to satisfy his personal curiosity outside working hours, as was the case in *Simon*.

The facts in *Myszkowski v. Wilson and Company, Inc.*, 155 Neb. 714, 53 N.W.2d 203 (1952), appear to be more analogous

to those in the instant case than to those in *Simon, supra.* This court concluded that the claim in *Myszkowski* was compensable because "[the] claimant did not leave his line of duty under his employment for purposes of his own." 155 Neb. at 720, 53 N.W.2d at 208. Our decision in *Simon, supra,* is analyzed in 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 23.66 at 5-240 (1997), wherein it is concluded that the claim for compensation in *Simon* "is weakened both by the size of the deviation and by the fact that it occurred outside working hours and not in connection with a normal coming or going trip." We agree. Therefore, we decline to apply the rule in *Simon* to the instant case. Accordingly, we hold that the Court of Appeals did not err in applying the analysis in *Myszkowski* to this case.

Having found that the incident of horseplay engaged in by Varela was not so substantial a deviation as to remove him from the scope of his employment, we affirm the decision of the Nebraska Court of Appeals.

AFFIRMED.

STEPHAN, J., dissenting.

I respectfully dissent. The trial judge made a specific finding that while unloading roofing supplies on a wet roof, Varela responded to verbal "mocking" by coworkers by challenging one of them to an arm-wrestling contest and that his injury occurred "in preparation or during the arm-wrestling contest." Based on these findings, I regard the determination that Varela's injury occurred as a result of conduct arising out of his employment to be clearly erroneous.

Whether an accident arose "out of" and "in the course of" employment, as those terms are used in the workers' compensation law, must be determined from the facts of each case. *Cords v. City of Lincoln,* 249 Neb. 748, 545 N.W.2d 112 (1996); *Tompkins v. Raines,* 247 Neb. 764, 530 N.W.2d 244 (1995). The claimant has the onus of proving that the injury arose both "out of" and "in the course of" his or her employment. *Cords v. City of Lincoln, supra; Welke v. City of Ainsworth,* 179 Neb. 496, 138 N.W.2d 808 (1965).

The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from risks arising within the scope or sphere of the employee's job. The

phrase "in the course of" refers to the time, place, and circumstances surrounding the accident. *Cords v. City of Lincoln, supra; Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996). The test to determine whether an act or conduct of an employee which is not a direct performance of his work "arises out of" his employment is whether the act is reasonably incident thereto, or is so substantial a deviation as to constitute a break in the employment which creates a formidable independent hazard. *Cords v. City of Lincoln, supra; Cannia v. Douglas Cty.*, 240 Neb. 382, 481 N.W.2d 917 (1992). We stated in *Schademann v. Casey*, 194 Neb. 149, 155, 231 N.W.2d 116, 121 (1975):

"All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, *not in conflict with specific instructions, as an employee may normally be expected to indulge in,* under the conditions of his work, are regarded as being within the scope or sphere of the employment."

(Emphasis supplied.)

I agree that Varela's injury occurred at his assigned place of work at a time when he should have been working, but in my view the evidence clearly establishes that his activity at the time of his injury was not reasonably incident to the performance of his duties. When Varela laid down his work and challenged a coworker to an arm-wrestling contest, he was no longer serving his employer's interest; he was acting contrary to work rules which specifically prohibited "[b]oisterous or disruptive activity in the workplace." I would not regard Varela's conduct as a "trifling and insubstantial deviation" from his duties, but, rather, a deliberate act done with complete disregard of those duties and the employer's legitimate expectation that workers perform their assigned tasks in compliance with rules governing workplace conduct. If initiating an arm-wrestling contest while standing on a slippery roof under construction is not so substantial a deviation from the work of a roofer as to create a "formidable independent hazard," the statutory requirement that an injury must arise out of employment in order to be compensable becomes essentially meaningless.

Neither am I convinced by the rationale of the Court of Appeals that Varela's injury should be compensable because it

occurred during a work stoppage of "momentary duration . . . at the very outset of the horseplay." *Varela v. Fisher Roofing Co.*, 5 Neb. App. 722, 732, 567 N.W.2d 569, 576 (1997). The focus should be on what the employee was doing, not how long he did it before he was injured. If the nature of Varela's conduct at the time of his injury was a consciously deliberate and substantial deviation from his employment, as I believe it was, the injury should not be compensable whether it occurred 1 minute or 1 hour after the conduct commenced.

I respectfully disagree with the attempt of the majority to distinguish this case from *Simon v. Standard Oil Co.*, 150 Neb. 799, 36 N.W.2d 102 (1949). In that case, an employee walked approximately 30 feet from his work area after completing his shift and was injured while examining a newly installed exhaust fan, which was not a part of his duties. In holding the injury noncompensable, we stated that if Simon had remained in his work area "or if he had not yielded to his curiosity as to the operation of the fan," he would have received no injury. 150 Neb. at 807, 36 N.W.2d at 106. Here, if Varela had continued to do his work instead of setting it aside and yielding to his belief that he could defeat his coworker in an arm-wrestling contest in violation of his employer's rules, he would not have been injured either. I would reverse with directions to dismiss the petition.

CAPORALE, J., joins in this dissent.