Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/12/2020 09:07 AM CDT

Gregory J. Webber, appellant, v. Gregory J.
Webber, employer, and Vanliner Insurance
Company, its workers' compensation
insurer, appellees.

___ N.W.2d ___

Filed May 5, 2020.    No. A-18-993.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

2. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

3. ____: ____. On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

4. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

5. **Workers' Compensation: Appeal and Error.** In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law.

6. **Workers' Compensation.** Whether an injury arose out of and in the course of employment must be determined from the facts of each case.

7. **Workers' Compensation: Proof.** The two phrases "arising out of" and "in the course of" in Neb. Rev. Stat. § 48-101 (Reissue 2010) are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist.

8. ____: ____. The "in the course of" requirement tests the work connection as to the time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of employment and in the course of an activity whose purpose is related to employment.

9. **Workers' Compensation: Words and Phrases.** The phrase "arising out of," as used in Neb. Rev. Stat. § 48-101 (Reissue 2010), describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job.

10. **Workers' Compensation.** All risks causing injury to an employee can be placed within three categories: (1) employment related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—a risk that is neither distinctly associated with the employment nor personal to the claimant.

11. ____. Generally, harm that can be attributed solely to personal or idiopathic causes is universally noncompensable.

12. ____. The test to determine whether an act or conduct of an employee which is not a direct performance of the employee's work "arises out of" his or her employment is whether the act is reasonably incident thereto, or is so substantial a deviation as to constitute a break in the employment which creates a formidable independent hazard.

13. ____. The "arising out of" employment requirement is primarily concerned with causation of an injury.

14. ____. All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his or her work, are regarded as being within the scope or sphere of the employment.

15. ____. Injuries resulting from horseplay may be within the scope of employment; such injuries are within the scope of employment and compensable if (1) the deviation is insubstantial and (2) the deviation does not measurably detract from the work.

16. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Workers' Compensation Court: James R. Coe, Judge. Affirmed.

Travis Allan Spier, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellant.

Jennifer S. Caswell and Jenna M. Christensen, of Baylor Evnen, L.L.P., for appellees.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Bishop, Judge.

## INTRODUCTION

While inside a warehouse to perform duties related to relocation services, Gregory J. Webber sustained injuries when he lit a firework that exploded in his hands. He sued his employer (his sole proprietorship) and its workers' compensation insurer, Vanliner Insurance Company (collectively Employer), for workers' compensation benefits. Webber appeals from the decision of the Nebraska Workers' Compensation Court which dismissed Webber's case, finding that his injuries did not arise out of his employment and that his actions constituted willful negligence. We affirm.

## BACKGROUND

In July 2016, Webber filed a petition in the Workers' Compensation Court against his Employer. He stated that he was a "self-employed sole proprietor" working on a full-time basis as an "over-the-road truck driver." He alleged that on or about June 27, in Omaha, Nebraska, while in the course and scope of his employment, he sustained injuries to his "bilateral hands and body as a whole, and hearing loss" after "a firework exploded in [his] hands." Webber sought indemnification and payment of medical and mileage expenses.

The matter came on for hearing before the Workers' Compensation Court on July 6, 2018. The parties stipulated that at all times relevant, Webber was a "self-employed sole proprietor working on a full-time basis as a relocation specialist/over-the-road truck driver." The parties also stipulated that Webber's "employer was organized as an unincorporated sole proprietorship based out of Lincoln, Lancaster

County, Nebraska." Webber testified that his job generally entailed doing "everything there is in the capacity of moving somebody from one location to another location, no matter what it may be," including taking "everything apart," packing all of a customer's "stuff up," loading furniture (into a semi-truck), and then putting "everything back together." Because some loads must be stored, Webber occasionally unloaded a customer's items at a Select Van & Storage Co. (Select Van & Storage) warehouse.

Based on an "Independent Contractor Operating Agreement," Webber was a contractor of Select Van & Storage, which company was defined as an "authorized motor carrier that transports and stores household goods and general commodities" under either its own operating authority or the authority of United Van Lines, LLC, and/or Mayflower Transit, LLC. According to Webber, he drove exclusively for Mayflower Transit, and he received work through Select Van & Storage. Webber indicated that Select Van & Storage had offices in Lincoln and other states; we refer to its warehouse located at "80th and J" in Omaha, where the incident at issue took place, as the "warehouse" in this opinion.

On June 27, 2016, Webber drove his semi-truck from his residence in Lincoln to the warehouse to check on a trailerload that he was to deliver. He had left his trailer backed into the warehouse. Webber remembered the "first thing" he wanted to do was make sure he "got everything off the [warehouse] floor," referring to customer items for the shipment, and then he was "going to hook up to [his] trailer and continue on with [his] route." However, when he arrived at the warehouse he saw David Tilley, who worked as a warehouse manager there, near the front of the warehouse. Webber agreed Tilley was a fellow fireworks enthusiast based on conversations they had in the past about fireworks. In his semi-truck, Webber had an artillery shell that was "about the size of a golf ball." Webber parked, placed that firework in his pocket, exited his semi-truck, and entered the warehouse.

Once inside the warehouse, Tilley walked with Webber toward Webber's trailer; Tilley testified that he (Tilley) was headed to go prepare semi-trucks for his own "home deliveries." During the hearing, Webber drew a continuous, straight line on an exhibit of an overhead map of the warehouse to indicate the complete path he would have taken to reach his trailer. Webber said that he showed Tilley the firework as they were headed "that way." At some point while walking in that direction, Webber said he asked Tilley to light off the firework but Tilley declined the offer, telling Webber that he did not want to light it because the "wick was too small"; something Tilley confirmed. Tilley testified that he did not want the firework "going off in [his] hands," out of concern for the wick's short length. Tilley estimated the wick was about a "quarter of an inch" long, while Webber said it was "about an inch" long. Tilley recalled that he told Webber "if you want to light it, go right ahead." Webber indicated that he stopped in essentially the midpoint of his intended path to reach his trailer and moved about 6 feet away from that path to near an open exit door but remained inside the warehouse. Webber then lit the firework. Webber estimated that about 10 seconds of time passed from the moment he moved to the door to when the firework went off. Tilley was standing behind Webber at that time and recalled that "as soon as it lit, it went off." Webber sustained "[b]last / powder burn injur[ies]" to his stomach and lower legs and to both of his hands, resulting in partial amputations of several fingers.

A fundraiser webpage "by Greg Webber," said, in part, "while inspecting fireworks and timing of certain fireworks, one exploded way before I ever thought it would." Webber testified that this was not an accurate statement and that his sister wrote it, not him. The webpage also stated, "I feel like a dumb ass to even ask for help, when what I did was all my own fault and just a bad decision, but unfortunately I still need help." When asked why he had a firework in his pocket while in the warehouse on June 27, 2016, Webber answered that he "like[d]

lighting fireworks just as much as the next guy" and that he
had learned that Tilley and Tilley's son (who also worked for
the warehouse at some point) liked fireworks. Webber said he
and Tilley "both liked to light [fireworks] off and blow stuff up
and have fun with them on [Independence Day]." Webber was
aware that Tilley had previously lit off a loud firework at the
warehouse. Webber brought out the firework on June 27 "just
to say, you guys thought you had some loud ones; well, I have
an even louder one." He stated that on June 27, he only had
"the one" (firework) in his semi-truck because he was "hoping
to run into them eventually" (Tilley or Tilley's son). He con-
sidered it important to develop rapport with employees of the
warehouse and said that lighting the firework played a role in
that, stating, "you want people to like you and get along with
you, and you find a common ground with another individual
and boys being boys [sic]."

Webber said a lot of job assignments he received through
Select Van & Storage were based on ratings on metrics such
as customer feedback: "[T]he higher rating you have, the bet-
ter job you get." He talked about how he had lit off fireworks
for customers he had relocated in the past, usually for a "pretty
good-sized job and around the 4th of July." Feedback from
those shows affected his "bottom line." He thought that, as
his own employer, it was appropriate to be using fireworks for
what was referred to as client promotion. He also had invited
employees who he had employed throughout the year to his
home (he hired laborers employed by the warehouse some-
times to move items off or onto his semi-truck) and put on a
"little firework show" for them. Webber had "lit off hundreds
and thousands of fireworks" in his life and did not think he
was going to get hurt on June 27, 2016. He had "lit off many
fireworks for customers," so it was "just another day."

Upon a joint stipulation of the parties, at a hearing in August
2018, the court accepted into evidence written closing argu-
ments of each of the parties. In September, the compensation
court entered an "Order of Dismissal." The court concluded

that Webber's actions did not arise out of Webber's employment and that they constituted willful negligence. It dismissed Webber's petition. We will discuss the court's specific findings from its order as relevant below.

Webber appeals.

## ASSIGNMENTS OF ERROR

Webber claims, consolidated and restated, that the Workers' Compensation Court erred by (1) concluding his injuries did not arise out of and in the course of his employment; (2) failing to follow "binding precedent" from *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998), and failing to apply its horseplay analysis to this case to find his injuries arose out of and in the course of his employment; (3) reaching the willful negligence issue because it was inappropriate and unnecessary dicta, and even if appropriate to address it, finding there was sufficient, competent evidence in the record to support its findings concerning willful negligence; and (4) failing to construe provisions of the Nebraska Workers' Compensation Act liberally to carry out the act's purpose.

[1] We note that there is no separate heading and argument in Webber's brief specifically related to the last assigned error, and we therefore do not address it. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019).

## STANDARD OF REVIEW

[2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

*St. John v. Gering Public Schools*, 302 Neb. 269, 923 N.W.2d 68 (2019).

[3,4] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.*

[5] In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law. *Id.*

## ANALYSIS

### Applicable Legal Principles

[6] The Nebraska Workers' Compensation Act provides that when an employee suffers personal injury caused by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation from his or her employer if the employee was not willfully negligent at the time of receiving such injury. Neb. Rev. Stat. § 48-101 (Reissue 2010). Whether an injury arose out of and in the course of employment must be determined from the facts of each case. *Murphy v. City of Grand Island*, 274 Neb. 670, 742 N.W.2d 506 (2007).

[7,8] The two phrases "arising out of" and "in the course of" in § 48-101 are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist. *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 690 N.W.2d 610 (2005). The "in the course of" requirement tests the work connection as to the time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of employment

and in the course of an activity whose purpose is related to employment. *Cox v. Fagen*, *Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996).

[9-11] The phrase "arising out of," as used in § 48-101, describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job. *Zoucha, supra*. All risks causing injury to an employee can be placed within three categories: (1) employment related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—a risk that is neither distinctly associated with the employment nor personal to the claimant. *Maroulakos v. Walmart Associates*, 300 Neb. 589, 915 N.W.2d 432 (2018). Harm that arises from risks distinctly associated with the employment is universally compensable. *Id.* Generally, harm that can be attributed solely to personal or idiopathic causes is universally noncompensable. *Id.* Harm that arises from neutral risks is generally compensable. *Id.*

Generally, a risk may be classified as neutral for either of two reasons: (1) the nature of the risk may be known, but may be associated neither with the employment nor the employee personally, or (2) the nature of the cause of harm may be simply unknown. *Id.* Examples of neutral risks of the first type are stray bullets, lightning, or hurricanes, while the most common example of a neutral risk of the second type is a purely unexplained fall. *Id*.

[12,13] The test to determine whether an act or conduct of an employee which is not a direct performance of the employee's work "arises out of" his or her employment is whether the act is reasonably incident thereto, or is so substantial a deviation as to constitute a break in the employment which creates a formidable independent hazard. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003). The "arising out of" employment requirement is primarily concerned with causation of an injury. *Id.*

[14] All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his or her work, are regarded as being within the scope or sphere of the employment. *Id.* (employee's journey to store to obtain soft drinks for herself, supervisor, and coworker was matter of personal convenience and comfort which employees may normally be expected to indulge in; injury arose out of employment). See, also, *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996) (city employee's meeting with mayor to discuss his retention as employee after 26 years of exemplary service in responsible managerial position, while not direct performance of employee's work, was subject of beneficial interest to city and was not forbidden by employee's direct superior; injury arose out of employment); *Cannia v. Douglas Cty.*, 240 Neb. 382, 481 N.W.2d 917 (1992) (correction officer's jogging while attending jail management course at training center was reasonably incidental to his employment where attendance and successful completion of course was mandatory and evidence showed trainees were encouraged to jog or walk while attending the course; injury arose out of employment); *Parks v. Marsden Bldg. Maintenance*, 19 Neb. App. 762, 811 N.W.2d 306 (2012) (employee thought traveling to his home to retrieve building access card was necessity arising from his employment; that deviation from employment regarding handbook policy of clocking out and getting permission when leaving building was not substantial and was reasonably incident to his employment).

## LIGHTING FIREWORK DID NOT ARISE
## OUT OF EMPLOYMENT

The Workers' Compensation Court found that the preponderance of the evidence showed that Webber's lighting of the firework inside the warehouse did not arise out of his

employment as it "had nothing to do" with his work as a relocation specialist to help customers move. The compensation court noted the following: The purpose of Webber's visit to the warehouse was to check on the trailer he was to drive to relocate a customer; Webber showed Tilley "the firework to show him that he had a bigger firework than Tilley was used to," and Webber thought he "had a louder firework" and wanted to show it to Tilley; Webber thought it was important to develop rapport with the Select Van & Storage people, which "is why [Webber] brought the firework as 'boys will be boys'"; Webber intended to throw the firework through an open door after it was lit; and Webber did not intend for the firework to go off in the warehouse. The compensation court concluded that Webber's actions were "solely personally related and non-business oriented" and that the lighting of the artillery shell in the warehouse "had nothing to do" with inspecting a trailer to be delivered.

Webber argues that the compensation court erred as a matter of fact and law in concluding his injuries did not arise out of his employment. Webber asserts that as "his own employer," he "defines the activities which arise out of his employment, including incorporating fireworks use as a regular part of his job as a relocation specialist." Brief for appellant at 23. He claims the compensation court did not acknowledge he was his own employer, as the parties had stipulated, for purposes of identifying the customs of his workplace. He argues that his use of fireworks was an employment risk because he allegedly used fireworks to build rapport with peers and improve client satisfaction ratings.

However, even if Webber put on firework shows for customers as some kind of appreciation or marketing event, those are not the circumstances present here. Lighting a firework at a warehouse where he was scheduled to pick up a trailerload for delivery was not within the scope of Webber's job, and thus, the accident leading to his injury did not arise out of his employment. See *Zoucha v. Touch of Class Lounge*, 269 Neb.

89, 690 N.W.2d 610 (2005) (phrase "arising out of" as used in § 48-101 considers whether the accident resulted from risks arising within the scope of the employee's job). There is no question that Webber's action in lighting the firework at the warehouse was not in direct performance of his work. And as set forth previously, the test to determine whether an act or conduct of an employee which is not a direct performance of the employee's work "arises out of" his or her employment is whether the act is reasonably incident thereto, or is so substantial a deviation as to constitute a break in the employment which creates a formidable independent hazard. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003).

The evidence supports the compensation court's conclusion that the lighting of the firework by Webber was solely personal and had nothing to do with his work. Given Webber's own description of his duties involved in his work as a relocation specialist and an over-the-road truckdriver and his specific work-related purpose for being at the warehouse on June 27, 2016 (i.e., checking that trailer was fully loaded and connecting trailer to semi-truck for delivery), the evidence supported the compensation court's conclusion that lighting a firework in a warehouse was entirely a personal endeavor and was not reasonably incidental to his work. Further, Webber's act of lighting a firework, under the facts of this case, simply cannot be categorized as a matter of personal convenience and comfort, a matter of necessity, or a beneficial interest to the employer, as indicated in the case examples cited previously. Rather, the evidence showed Webber lit the firework in an effort to impress Tilley with a loud firework.

While Tilley was seemingly indifferent about whether Webber lit the firework in the warehouse, there was no dispute among the parties at the hearing that neither Tilley nor Select Van & Storage was Webber's employer. Webber was self-employed, and the compensation court noted the same. Thus, Webber's arguments in his brief based on evidence regarding

past behavior of Select Van & Storage employees and policies of that company are not relevant.

To support that lighting the firework was incidental to his work, Webber claims that he "wanted to develop rapport with Select Van & Storage employees, because that [was] where the majority of his business was generated." Brief for appellant at 23. But there was no evidence that Webber's assigned jobs through Select Van & Storage depended on successful rapport-development with warehouse employees. By Webber's own account, he received a lot of his jobs based on his "rating," and higher ratings meant "better" jobs and "[m]ore money." Ratings depended on "how well you do your job," "the feedback you get from the customer," and "whether you're showing up in uniform on time," but "[t]he rapport you develop with the customer [was] probably the most important thing." Webber also claims his firework use was an employment risk because of its alleged purpose in positively impacting his customer ratings, having arranged firework shows for some customers in the past. However, such arguments related to developing customer relationships are not persuasive, because the evidence does not show any customer was present when Webber lit the firework in the warehouse. Webber testified that, besides Tilley, "[n]obody else was around" when he lit the firework on June 27, 2016. There was no beneficial interest to Webber's sole proprietorship from his action that led to his injuries.

We find no error in the compensation court's conclusion that Webber's actions were personal and had nothing to do with his job, and thus, Webber's injuries did not arise out of his employment.

## HORSEPLAY

Webber contends that this case is "clearly a horseplay case" pursuant to *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998), such that his injuries arose out of and in the course of his employment. Brief for appellant at 15. He claims that the compensation court's "failure to apply the

horseplay analysis from <u>Varela</u> constitutes legal error justifying reversal." *Id*. at 16. However, the Employer contends it was unnecessary for the compensation court to apply *Varela, supra*, "because *Varela* requires a scintilla of evidence that the alleged horseplay is somehow related to work and the [compensation] court found absolutely no employment purpose to lighting the firework." Brief for appellee at 10. Further, even applying *Varela*, Webber's "injury did not arise out of or occur in the scope of his employment." *Id*. at 11. We agree with the Employer that it was unnecessary for the compensation court to apply *Varela* to the facts here, given the court's conclusion that the "lighting of the firework in the warehouse had nothing to do with [Webber's] job," and was "solely personally related." As we explain next, the horseplay at issue in *Varela* stemmed from interactions between employees related to their work, which was not the case here.

In *Varela, supra*, the Nebraska Supreme Court considered whether an arm-wrestling incident on the roof of a school between two employees constituted horseplay and whether certain incidents of horseplay, resulting in injury to a worker, might be within the scope of employment and thus arise out of it. It noted that the case involved "some good-natured teasing about whether [the employee] was carrying his share of the workload," which "in turn led to the arm-wrestling challenge as a test of strength and manhood," *Varela*, 253 Neb. at 672, 572 N.W.2d at 783. The court stated that the "arm-wrestling match arose spontaneously out of work-related banter" and that the "accidental slip during the course of this momentary horseplay" caused the employee's injury. *Id.* The employee's "foot slipped off the skylight, causing him to fall and injure his right foot." *Id*. at 668, 572 N.W.2d at 781.

[15] In considering this court's opinion on further review, the Nebraska Supreme Court noted this court's adoption of "Professors Larson and Larson's theory that '"horseplay participation . . . should have the benefit of the general rule that trifling and insubstantial deviations, which do not measurably

detract from the work, should not be treated as departures from the scope of employment." . . .'" *Id.* at 671, 572 N.W.2d at 782-83. The Supreme Court cited the following portion of this court's analysis of the case:

> "We believe that Larson and Larson's proposed test for compensability is appropriate and that certain incidents of horseplay, resulting in injury, may be within the scope of employment and arise out of it. We look to whether the deviation was substantial because, obviously, [the employee] and [the coworker] were not directly working when the injury occurred. We find that the work stoppage was of momentary duration, the injury happened at the very outset of the horseplay, this was not the sort of incident which carried a significant risk of serious injury, and the incident was a trifling matter, at least in its intention by the two employees. These factors lead to the conclusion that the arm-wrestling was an insubstantial deviation and did not measurably detract from the work (but for the injury)."

*Varela v. Fisher Roofing Co.*, 253 Neb. 667, 671, 572 N.W.2d 780, 783 (1998). The Supreme Court agreed with this court's test for compensability of an injury resulting from horseplay, namely, that such injuries are within the scope of employment and are compensable if "(1) the deviation is insubstantial and (2) the deviation does not measurably detract from the work." *Id.* The Supreme Court also agreed with this court that the arm-wrestling incident at issue "was an insubstantial deviation and did not measurably detract from the work." *Id.* at 672, 572 N.W.2d at 783.

In the present case, Webber's action in lighting a firework in the warehouse did not arise spontaneously out of work-related banter, nor was it the type of trifling matter or insubstantial deviation characterized as horseplay in *Varela, supra*. Rather, it was a personal pursuit intended to impress another fireworks enthusiast, Tilley. Webber intentionally put the firework in his pocket before entering the warehouse. As

explained by Webber himself, his purpose was "just to say, you guys thought you had some loud ones; well, I have an even louder one." This was not an action that spontaneously arose out of workplace activities; rather, it was a substantial deviation from work which would have measurably detracted from work, even had Webber not been injured. We find no error by the compensation court in finding it unnecessary to address horseplay in its order.

### FINDING OF WILLFUL NEGLIGENCE

[16] Webber contends that the compensation court "erred as a matter of law in reaching the willful negligence issue after it had already concluded there was not a work injury arising out of employment" and that thus, the "willful negligence determination" should be reversed. Brief for appellant at 29. Webber provides no authority to support reversing the compensation court's order, which reached the issue of willful negligence. It is not unusual for a trial court to provide an alternative basis for reaching a decision. However, we find it unnecessary to address this portion of the compensation court's order, because we have already found no error in the dismissal of Webber's action based upon the compensation court's finding that the accident did not arise out of Webber's employment. See *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

### CONCLUSION

We affirm the judgment of the Workers' Compensation Court dismissing Webber's petition.

AFFIRMED.