JOSEPH A. GLORIA, APPELLEE, V. NEBRASKA PUBLIC POWER
DISTRICT, APPELLANT.
438 N.W.2d 142

Filed April 7, 1989.   No. 88-745.

John K. Sorensen, of Wright & Sorensen, P.C., for appellant.

George A. Sommer for appellee.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and COADY, D.J.

WHITE, J.

This is an action for workers' compensation benefits filed by the appellee, Joseph A. Gloria, on April 13, 1987. The appellee seeks benefits alleged to be due as a result of an injury sustained on March 25, 1981, in an accident arising out of and in the course of his employment. The last payment was made by the defendant on January 18, 1982.

On November 9, 1987, the petition of the plaintiff was dismissed after the first hearing before a single judge of the

Nebraska Workers' Compensation Court. Plaintiff filed an application for rehearing and, on August 19, 1988, three judges of the Nebraska Workers' Compensation Court reversed the order of dismissal and awarded the plaintiff benefits of $180 per week for temporary total disability, from November 5, 1986, and for as long in the future as the plaintiff remains totally disabled. It is from this award that the defendant appeals.

The appellant assigns seven errors, which, in summary, state that the court erred in finding the claimant's injury not barred by application of the statute of limitations.

Factual findings by the Workers' Compensation Court have the same effect as a jury verdict in a civil case and will therefore not be set aside unless clearly wrong. *Noah v. Creighton Omaha Health Care Corp.*, 213 Neb. 169, 328 N.W.2d 203 (1982). "We are not at liberty to substitute our views for those of the Workmen's Compensation Court regarding questions of fact if there is evidence in the record to substantiate its conclusions." *Thomas v. Kayser-Roth Corp.*, 211 Neb. 704, 711, 320 N.W.2d 111, 115 (1982). Although there is some conflict in the evidence, sufficient evidence exists to affirm the findings of the Workers' Compensation Court.

As stated above, the appellant contends that this claim must fail because the statute of limitations has expired. Neb. Rev. Stat. § 48-137 (Reissue 1988) provides in relevant part:

In case of personal injury, all claims for compensation shall be forever barred unless . . . within two years after the accident, one of the parties shall have filed a petition . . . . When payments of compensation have been made in any case, such limitation shall not take effect until the expiration of two years from the time of the making of the last payment.

The 2-year limitation period began to run when the last medical payment was made by the appellant on January 18, 1982. This action was not filed until April 13, 1987. Therefore, this case is time barred unless it is found to be within an exception that tolls the statute of limitations.

One well-recognized limitations exception is for injuries that are latent and progressive. Because of the latent nature of

certain injuries, we have repeatedly held that when a claimant suffers such an injury, the statute of limitations will be tolled until it becomes, or should have become, reasonably apparent to the claimant that a compensable disability was present. *Cemer v. Huskoma Corp.*, 221 Neb. 175, 375 N.W.2d 620 (1985). In *Thomas v. Kayser-Roth Corp., supra* at 707-08, 320 N.W.2d at 114, we stated that

> if an employee suffers an injury which appears to be slight but which is progressive in its course, and which several physicians are unable to correctly diagnose, the worker's failure to file claim or bring suit within the time limited by law will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident.

The facts surrounding the injury incurred by the appellee must be examined in order to determine whether the disability from which the appellee now suffers is within the scope of the "latent and progressive injury" exception to the statute of limitations. The appellee, Gloria, is a 48-year-old man with a ninth-grade education and no special training or experience. Gloria began work as a lineman with the Nebraska Public Power District (NPPD) on May 15, 1974, where he worked until November of 1986. On March 25, 1981, he was involved in an accident which is the basis of this action.

Prior to the accident, Gloria had some difficulty with his cervical spine. On October 20, 1980, Gloria was admitted to the hospital for decompression laminectomy surgery due to a diagnosis of degenerative changes in his cervical spine. These degenerative changes were located in the C6 through T1 vertebras. The operation was performed by Dr. Ernest Beehler, a neurosurgeon located in Scottsbluff, Nebraska. The medical reports indicate that Gloria was recovering well from the surgery, and he returned to work in January of 1981. On March 25, 1981, the appellee was working on a power pole. A spike strapped to one of his boots apparently hit a soft spot on the pole, and he fell, still strapped to the pole, 17 or 18 feet to the ground. He landed on his feet and then fell backward. An ambulance took him to the hospital, and Gloria was released

approximately 3 hours later.

Immediately after the fall, appellee testified, his body went numb. However, feeling did return to his body prior to his discharge from the emergency room. The doctor on duty at the emergency room did not indicate in his report that there was any apparent injury, but noted that should any symptoms appear, Gloria was to see his family physician. Gloria returned to work the following day but was unable to do much of anything other than watch for a period of about a month. The appellant saw Dr. W.F. Ropp on March 30, 1981, due to soreness he was still experiencing in his upper extremities. Dr. Ropp, an orthopedic specialist, reported that Gloria had a strain and contusion, but apparently did rule out the presence of a spinal cord contusion at that time. After consulting with Dr. Beehler, he prescribed merely "conservative treatment at [home]" and moist heat to be applied to Gloria's upper extremities. By December 8, 1981, Dr. Beehler stated in his report that Gloria was "considerably improved even over the last time I saw him." No evidence of atrophy and no definitive weakness at all were found. In conclusion, Dr. Beehler wrote, "From the neurological point of view he has recovered sufficiently that he can do this sort of thing [work]. He says that most all of the pain is gone." He resumed climbing poles when he was released from Dr. Beehler's care. The date Gloria was released is not clear from the record. Dr. Beehler testified that Gloria continued to improve after the fall; however, he did not remember the exact date of Gloria's release.

Between his visits with Dr. Beehler in 1981 and 1986, Gloria had one incident with a sharp pain in his lower back. On April 1, 1983, he saw his family physician, Dr. Alan Johnson, for severe low back pain. This was apparently diagnosed as a muscle spasm. He saw Dr. Johnson for followup visits on both September 28, 1983, and July 31, 1984. This episode was not shown to be directly related to the injury suffered by Gloria in March of 1981.

Finally, in the summer of 1986, Gloria began noticing a substantial change in his condition. He began dropping things and felt his hands going numb. Gloria visited Dr. Beehler at that time. On November 4, 1986, a myelogram was performed

which diagnosed cervical cord atrophy and a bulging disk around the L2 and L3 vertebras. Medical reports indicate that this bulging disk was not related in any way to the shrinking, or atrophy, of the cord and instead was, in all probability, related directly to the fall. Just before the myelogram was performed, Dr. Beehler stated in his clinical summary that Gloria "fell off a pole . . . but seemed to recover." In a report from Dr. Beehler on December 11, 1986, he stated that following the fall, Gloria gradually became aware of the present symptoms and that now there appears a generalized weakness. Dr. Beehler testified in his deposition that he does not believe the current injury was caused by the previous surgery because if this was the case, Gloria would not have improved so significantly before the accident.

The evidence in this case establishes that Gloria had an injury for which he sought medical treatment. According to medical testimony and the appellee's own statements, following the accident the claimant appeared to recover. It was not until November of 1986, following the myelogram, that the nature of his injury was discovered. Since that time the condition of the claimant has worsened, and the prognosis is very poor. The compensation court could reasonably have found from the evidence that the injury to Gloria's back was of such a nature that it could not have been detected at the time the injury occurred and was not discovered until the myelogram was performed in 1986.

Although there may be some conflicting evidence in this action, we have held, " 'On appeal of a workmen's compensation case to the Supreme Court, if there is reasonable competent evidence to support the findings of fact in the trial court, the judgment, order, or award will not be modified or set aside for insufficiency of the evidence.' " *O'Connor v. Anderson Bros. Plumbing & Heating*, 207 Neb. 641, 645-46, 300 N.W.2d 188, 191 (1981), citing *Borowski v. Armco Steel Corp.*, 188 Neb. 654, 198 N.W.2d 460 (1972). Because there is evidence to support the decision of the three-judge panel, we affirm the decision.

Because this appeal was taken by the employer and no reduction in the award was granted by this court, Gloria is

entitled to an award of reasonable attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1988). No specific amount was requested by the appellee in this appeal; therefore, we grant the claimant $1,500 as a reasonable attorney fee, to be taxed as costs against NPPD.

AFFIRMED.