DELBERT W. HARPHAM, APPELLANT, V. GENERAL CASUALTY
COMPANY, APPELLEE.
441 N.W.2d 600

Filed June 16, 1989.   No. 88-752.

T.J. Hallinan, of Cobb, Hallinan & Ehrlich, P.C., for
appellant.

John R. Hoffert, of Knudsen, Berkheimer, Richardson &
Endacott, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.
In this workers' compensation case the plaintiff-appellant,
Delbert W. Harpham, challenges the failure of the Workers'
Compensation Court to order his compensation carrier,
defendant-appellee General Casualty Company, to pay

additional benefits. He asserts, in summary, that the compensation court erred in (1) admitting certain videotaped evidence, (2) limiting his cross-examination in connection with those videotapes, (3) relying upon the same tapes to reach its determination, and (4) failing to award him an attorney fee.

Harpham is a 54-year-old man possessed of a general equivalency diploma earned while serving in the Navy. He had spent most of his adult life, a period of approximately 25 years, as a truckdriver. During the course of these years, Harpham was involved in several accidents, sustaining a variety of injuries to his back, neck, and arms. By no later than 1979, Harpham was aware that he suffered from cervical arthritis, and he ultimately decided to change occupations and operate laundromats for a living. He acquired two such facilities and performed all associated maintenance chores himself.

On February 7, 1986, he was alone at work at one of his laundromats dismantling a washing machine for repair when, in attempting to loosen a recalcitrant agitator shaft, he "just jerked on it" when he "was on [his] tiptoes over the top of it so that [his] shoulders were kind of like over the middle" of the machine. At this, Harpham experienced sharp pain at the base of his neck near his shoulders. In Harpham's words, "[I]t was just sharp and it shot like, you know, over below or maybe below my shoulder blade or in that area and down my [left] arm . . . [a]ll the way to my fingers." Harpham testified that he continues to suffer intermittent pain in his lower neck and left arm, that he has never regained full use of his left arm and hand, and that he is essentially unable to use his left hand and arm for any but the lightest of tasks. He also stated that he has been unable to engage in washing machine maintenance activities at his laundromats since the subject accident and was forced to sell at least one laundromat.

Dr. James Bobenhouse, a board certified neurologist, examined Harpham approximately 10 days after the injury was sustained, and last saw him in May of 1987, about 6 months before the trial from which this appeal is taken. He testified that at that time, Harpham suffered from pain and muscle weakness associated with spinal disk injuries incurred in an attempt to lift a washing machine tub at work.

Dr. Benjamin Gelber, a board certified neurological surgeon, first examined Harpham in connection with the subject injury in June 1986, some 5 months after the injury. According to Gelber, Harpham at that time suffered from either a ruptured or herniated disk at the level of his highest thoracic and lowest cervical vertebras, as well as a less severe problem slightly higher in his spine. Gelber subsequently examined Harpham on several occasions and concluded, based on Harpham's reported continuing difficulties, that he suffered permanent impairment. Gelber also noted, however, that objective sensory testing demonstrated that Harpham was not giving Gelber "an accurate story about his pain or an accurate report" about Gelber's testing.

Dr. Douglass Decker, a neurologist who examined Harpham in April of 1987, made essentially the same observation. In Decker's opinion, were Harpham's condition truly as described by him, "[i]t would be nearly impossible" for Harpham to use his left arm.

General Casualty stopped paying compensation benefits to Harpham in late February or early March of 1987. A licensed private investigator engaged by General Casualty surreptitiously videotaped Harpham on March 3 and 4, 1987, at a lawnmower repair shop and at one of Harpham's laundromats. The investigator testified that in making these videotapes, she observed Harpham

bending at the torso, lying on his left and right side, using his right and left hands with tools and assisting in helping — assisting in removing a riding lawn mower from the back of a pickup, pushing a riding lawn mower on to a cart which he had attached to the pickup, lifting pieces of metal which looked like shelving to me, opening and closing the car door a number — on a number of occasions.

According to the investigator, Harpham did not hesitate in his movements, and appeared to move his neck and left arm through a normal range of motion without pain.

Three of these tapes, which had not been spliced or altered in any way, were received into evidence over Harpham's objection and viewed by the compensation court. These tapes show

Harpham using his left arm and hand to accomplish a variety of tasks, including carrying a child's wagon using only that arm; lying on the ground on his left side to examine the undercarriage of a garden tractor; vigorously using his left arm, while lying on his right side, to apply a large socket wrench to the undercarriage of the same garden tractor; lowering a garden tractor to the ground from the bed of a pickup truck; and washing windows at a laundromat. The net impression is of an able-bodied man able to use his left arm and hand, as well as his neck and head, normally, vigorously, and throughout an apparently normal range of motion without apparent pain or hesitation.

Harpham first complains that the compensation court erred in admitting the three surveillance tapes into evidence. We hold that the admission of evidence is within the discretion of the compensation court, whose determinations in this regard will not be reversed upon appeal absent an abuse of that discretion. This rule follows from an examination of the statutes governing evidentiary matters in the compensation court.

Nebraska's statutory rules of evidence do not apply to the compensation court. Neb. Rev. Stat. § 27-1101 (Reissue 1985). Rather, subject to the limits of constitutional due process, the Legislature has granted the compensation court the power to prescribe its own rules of evidence and related procedure. Neb. Rev. Stat. § 48-164 (Reissue 1988) provides in relevant part: "The Nebraska Workers' Compensation Court shall regulate and provide . . . the nature and extent of the proofs and evidence and the method of taking and furnishing the same for the establishment of the right to compensation." Neb. Rev. Stat. § 48-168 (Reissue 1988) provides:

> The Nebraska Workers' Compensation Court shall not be bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act.

Pursuant to these statutes, this court has determined that the

evidentiary rules of the compensation court may not be more restrictive than those of trial courts, *Fite v. Ammco Tools, Inc.*, 199 Neb. 353, 258 N.W.2d 922 (1977), but may be less so, *Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983).

Neb. Rev. Stat. § 48-163 (Reissue 1988) provides in relevant part:

> The compensation court or any judge thereof may, upon the motion of either party or upon its or his or her own motion, require the production of any books, papers, payrolls, medical reports, X-rays, photographs or plates, or any facts or matters which may be necessary to assist in a determination of the rights of either party in any matter pending before such compensation court or any judge thereof.

Neb. Rev. Stat. § 48-162 (Reissue 1988) provides in relevant part:

> In the examination of any witness and in requiring the production of books, papers, and other evidence, the compensation court shall have and exercise all of the powers of a judge, magistrate, or other officer in the taking of depositions or the examination of witnesses, including the power to enforce his or her orders by commitment for refusal to answer or for the disobedience of any such order.

Clearly, determinations by the compensation court in matters of evidence are entitled to the same deference shown to such determinations when made by other courts of the State of Nebraska. As this court recently noted in the context of a conversion action, the appropriate standard for review of an assignment of error directed at the exclusion or admission of evidence is one of abuse of discretion. *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989).

General Casualty laid sufficient foundation for admission of the subject tapes. Its investigator testified that she was familiar with the use of the equipment which she had used, that the equipment was in good working order, and that the images recorded on tape accurately reflected what she herself observed at the time.

Harpham's assertion that he was somehow unfairly

prejudiced by the practice at trial of fast-forwarding the tapes past places where he did not appear on the screen is absurd on its face and without merit. His related contention that he was unfairly prejudiced by the court's failure to view several other tapes in General Casualty's hands, which assertedly showed no physical activity by Harpham, is also spurious. What was at issue was Harpham's ability to use his left arm. Showing that there were times when Harpham did not use his left arm would not have established that he is unable to do so. Conversely, showing that there were times when Harpham used his left arm established his ability to do so and the magnitude of that ability.

Harpham next complains that the compensation court unfairly limited his cross-examination of General Casualty's private investigator regarding the subject tapes, claiming that he should have been allowed to question her more fully regarding what she observed while making the videotapes. When Harpham questioned the investigator about what she observed, General Casualty objected that the "films are the best evidence and we all saw what we saw." The compensation court ruled that if Harpham's question was "about what we observed [in viewing the tapes] . . . we will determine for ourselves what we saw"; if the question was about "observations [the investigator] made that are not shown [in the subject tapes]," then the question would be permitted. It was obviously no abuse of discretion for the compensation court so to rule. Harpham did not pursue the matter any further. Harpham's assignment of error in this connection is thus without merit.

Harpham next complains that the compensation court erred in relying upon the tapes it saw to reach its determination, particularly in light of contradictory expert testimony. Harpham is likewise mistaken in these contentions. We have already established that the subject tapes were properly admitted as competent evidence of Harpham's physical capabilities. In challenging the compensation court's reliance upon this evidence, Harpham in effect challenges the court's evaluation and weighing of the evidence before it. As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given testimony. *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989).

Regarding facts determined and findings made by the compensation court, Neb. Rev. Stat. § 48-185 (Reissue 1988) precludes this court's substituting its view of facts for that of the compensation court if the record contains evidence to substantiate the factual conclusions reached by the compensation court. *Gardner v. Beatrice Foods Co., supra.* Factual findings by the compensation court have the same effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Quinn v. Archbishop Bergan Mercy Hosp., ante* p. 92, 439 N.W.2d 507 (1989); *Gloria v. Nebraska Public Power Dist.,* 231 Neb. 786, 438 N.W.2d 142 (1989). If there is reasonable, competent evidence to support the findings of fact of the Workers' Compensation Court, its judgment will not be modified or set aside on appeal for insufficiency of the evidence. *Gloria v. Nebraska Public Power Dist., supra.*

The Workers' Compensation Court's determination as to an employee's ability to return to work in which he or she was previously skilled is a factual question which will not be disturbed on appeal to this court unless clearly wrong. *Kalhorn v. City of Bellevue,* 227 Neb. 880, 420 N.W.2d 713 (1988); *Nice v. IBP, inc.,* 226 Neb. 538, 412 N.W.2d 477 (1987). In this instance, the compensation court clearly was not wrong.

Finally, Harpham complains that the compensation court failed to award him an attorney fee. Where there is no reasonable controversy regarding an employee's claim for workers' compensation, Neb. Rev. Stat. § 48-125 (Reissue 1988) authorizes award to the employee of an attorney fee and a 50-percent payment for waiting time on delinquent payments. *Rodriquez v. Prime Meat Processors,* 228 Neb. 55, 421 N.W.2d 32 (1988). However, whether a reasonable controversy exists is a question of fact, and this court is bound by the findings of the compensation court on rehearing to the extent that such findings have support in the evidence. *Rodriquez v. Prime Meat Processors, supra.* In this instance, the compensation court's finding that a reasonable controversy existed as to whether Harpham was entitled to additional benefits is clearly supported by the evidence; indeed, in view of the fact that Harpham has failed to establish that he is entitled to further

benefits, a contrary finding would not find sufficient support to withstand appellate challenge. Harpham's final assignment of error is, like those before it, without merit.

AFFIRMED.