Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/28/2020 09:07 AM CST

Suzy Fentress, formerly known as Suzy Schlick,
appellee, v. Westin, Inc., and its workers'
compensation insurer, LM Insurance
Corporation, appellants.

___ N.W.2d ___

Filed December 6, 2019.    No. S-19-128.

1. **Appeal and Error.** As a threshold matter, an appellate court must determine what assignments of error were properly raised and argued on appeal.

2. **Rules of the Supreme Court: Appeal and Error.** The cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts.

3. ____: ____. When a brief of an appellee fails to present a proper cross-appeal pursuant to Neb. Ct. R. App. P. § 2-109 (rev. 2014), an appellate court declines to consider its merits.

4. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the compensation court may be modified, reversed, or set aside by an appellate court only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

5. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

6. **Workers' Compensation: Statutes: Appeal and Error.** The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

7. **Workers' Compensation: Evidence: Appeal and Error.** Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

8. **Workers' Compensation.** Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.

9. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

10. **Workers' Compensation: Pretrial Procedure.** Neb. Rev. Stat. § 48-177 (Cum. Supp. 2018) is a voluntary dismissal of a case which removes the case from the compensation court's docket.

11. **Workers' Compensation.** Neb. Rev. Stat. § 48-162.03(1) (Cum. Supp. 2018) grants a compensation court broad authority to rule on any motion except motions for new trial and motions for reconsideration.

12. **Workers' Compensation: Evidence.** Given the beneficent purposes of workers' compensation law, a compensation court can admit evidence in order to investigate cases in the manner it judges is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act.

13. **Workers' Compensation: Rules of the Supreme Court.** If an employer denies compensability for an injury, the employee can avoid the chain of referral and has a right pursuant to Neb. Rev. Stat. § 48-120(2)(a) (Cum. Supp. 2018) and Workers' Comp. Ct. R. of Proc. 50(A)(6) (2018) to select his or her own physicians for treatment and later seek compensation.

14. **Workers' Compensation: Proximate Cause: Proof.** In workers' compensation cases, an independent intervening cause, as the proximate cause of an injury, is, generally, a matter of defense and, as such, must be proved by the party asserting that defense.

15. **Workers' Compensation.** The mere possibility of an independent intervening cause does not relieve an employer from liability for an employee's otherwise compensable claim for workers' compensation and benefits.

16. **Workers' Compensation: Proof.** A defendant asserting a break in causation by an independent intervening cause must prove the break in causation by competent medical testimony if the claimed injuries are of such a character that scientific testimony is required to prove their validity.

17. **Workers' Compensation: Attorney Fees.** A determination of an award
of attorney fees under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2018) must
be calculated on a case-by-case basis.

Appeal from the Workers' Compensation Court: J. Michael Fitzgerald, Judge. Affirmed.

Robert Kinney-Walker, of Law Offices of James W. Nubel, for appellants.

Brynne Holsten Puhl, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Suzy Fentress, plaintiff-appellee, suffered a work-related injury in October 2014 while working for Westin, Inc. In October 2017, the Workers' Compensation Court entered an award under which she received temporary partial workers' compensation benefits. In 2018, Westin and LM Insurance Corporation (collectively Westin), defendants-appellants, filed a motion to terminate these temporary indemnity benefits and a motion to determine maximum medical improvement (MMI) and permanency. On October 22, 2018, the compensation court held an evidentiary hearing on Westin's motion to determine MMI. The compensation court admitted significant medical evidence, depositions, and testimony. On October 25, after the hearing, Westin moved to withdraw its motion to determine MMI, but the compensation court disallowed the withdrawal of the motion. A subsequent hearing was held on November 19, on Fentress' motion for attorney fees.

In a written order filed January 15, 2019, the compensation court made detailed factual findings and, inter alia, awarded temporary total disability and attorney fees to Fentress. Westin filed an appeal, and Fentress filed a purported cross-appeal.

As explained below, we determine that the compensation court did not err when it overruled Westin's motion to withdraw its motion to determine MMI; admitted recordings of Fentress' consultation with her physician; found that Fentress had achieved MMI with respect to mental health issues but not physical health issues; and awarded Fentress medical treatment, temporary total disability, and attorney fees. Accordingly, we affirm. Further, as indicated below, we do not consider Fentress' purported cross-appeal.

STATEMENT OF FACTS

On October 4, 2014, Fentress suffered compensable work-related injuries to her hip and mental health in the course of her employment with Westin, Inc., and she was awarded temporary partial benefits by the Nebraska Workers' Compensation Court in an October 6, 2017, award. The fact of the initial injury and initial award are not challenged in this appeal. Following the 2017 award, Fentress continued treatment, including hip surgery and pain management treatment targeted to avoid substance abuse relapse. Westin eventually filed motions to terminate indemnity benefits and to determine MMI and permanency, and in response, Fentress filed a motion requesting payment of medical expenses and attorney fees. The compensation court's January 15, 2019, order on these motions generally in favor of Fentress is the subject of this appeal.

The compensation court held a hearing on October 22, 2018, limited to the issue of whether Fentress had reached MMI. The parties submitted evidence and testimony, and the court took judicial notice of the October 6, 2017, award. On November 19, 2018, the court held a hearing on medical expenses to date and Fentress' request for attorney fees. The compensation court dictated its reasoning regarding the award of attorney fees to Fentress at the November 19 hearing. Neither hearing addressed permanency benefits.

At the October 22, 2018, hearing, the compensation court admitted exhibit 85, which included a recording taken by Fentress on May 2, 2018, of her consultation with her treating

physician, Dr. Steven Aviles. Fentress testified in her deposition and at trial that she took her cell phone to the appointments with Dr. Aviles and recorded what they said to each other, because she did not want to forget what he said. She testified that sometimes when she visited Dr. Aviles, she could not remember later what he said to do, so she recorded the conversation with her cell phone. At the point the recording was made, Fentress had been denying any improvement from surgery and Dr. Aviles placed Fentress at MMI and ordered a functional capacity evaluation (FCE). The recording includes the following exchange:

> Dr. Aviles: How does it feel?
>
> Fentress: [inaudible.]
>
> Dr. Aviles: Ok, well. At this point we'll say the surgery failed. Okay. It didn't work. We tried.
>
> Dr. Aviles: I'll give you [an FCE] to assess where you're at. Those are going to be permanent restrictions. Okay?
>
> Fentress: Okay.
>
> Dr. Aviles: There is no interpretation of the data. Whatever they say, is what it is.
>
> Fentress: Right.
>
> Dr. Aviles: Okay. Unless you fail what is called the reliability testing. Okay. So if for some reason they think that you're faking it, then it is unreliable, at that point you return to work without restrictions. So you have to give good effort. Okay? I'm sorry it didn't work for you.

The comments regarding failed surgery were consistent with a prior medical record from March 2018, in which Dr. Aviles had opined that "[u]nfortunately it is possible that the surgery may not have worked for her." At the hearing, Westin objected to receipt of exhibit 85 and stated the recordings were surreptitious and made without the permission of Dr. Aviles. Westin objected on the basis of foundation, hearsay, and late disclosure. The compensation court overruled these objections and admitted exhibit 85.

The clinic where Fentress had completed physical therapy conducted an FCE on May 22, 2018, approximately 3 weeks after the recordings of the consultation with Dr. Aviles. The FCE was found to be valid, based on Fentress' consistent performance and acceptable effort, and recommended a 41-pound lifting restriction. The FCE found that Fentress had a loss of motion, extension, abduction, adduction, internal rotation, and external rotation when the left hip is compared to the right hip, as well as decreased strength of the left hip. Prior to her hip surgery, Fentress had been working at a position requiring her to lift up to 50 pounds.

With regard to work restrictions, Westin disputed the restrictions recommended by the FCE and put on evidence that Fentress was released to full-duty work both by Westin's psychologist and by Dr. Aviles. Dr. Aviles opined that Fentress was able to return "to work full duty" and that she did not require "any future medical treatment/medications as a result of any hip injury." He wrote, "I normally do not recommend restrictions after hip arthroscopy. Previous repair has healed." Subsequently, Westin's counsel supplied Dr. Aviles with the recordings made by Fentress, and Dr. Aviles signed an October 18, 2018, statement that stated Fentress was a "malingerer" who was "simply exaggerating her disability."

Westin also submitted evidence that Fentress suffered some type of fall on June 30, 2018, subsequent to her FCE, which was documented in medical records. Westin contends that the fall eliminates its liability for the work-related injury. Fentress testified that the incident occurred when she was walking in a park. She testified, "I caught my left foot on — which is my bad leg, on that cement slab. And I basically stumbled. I caught myself with that bad leg out of reflex, and it initially hurt right away. It wasn't like super alarming, but it continued to hurt for a week." On July 6, Fentress was evaluated for her left hip pain and diagnosed with a left hip strain and referred to physical therapy, which she attended from July 31 through September 9. The compensation court noted that there are no

records showing a further examination related to the incident at the park.

Fentress testified that her left hip pain continually got worse and that she attempted to return to her pain management physician for an appointment in September 2018. Westin did not authorize the visit or medications. Fentress was referred by her family care physician to a different pain management specialist, Dr. Christopher D. Nelson.

Fentress consulted with Dr. Nelson of Des Moines Orthopedic Surgeons. Westin denied coverage for Dr. Nelson's care of Fentress. Dr. Nelson evaluated Fentress and reviewed her treatment records. Fentress reported that she had muscle pain localized to the "IT band, groin, hip flexor, quadriceps, bursa, glute, [sacroiliac joint], and low back," that she had difficulty standing for long periods of time, and that she was "depressed, miserable, and angry" as a result of her pain. Dr. Nelson's examination showed a decrease in motion of the left hip.

Dr. Nelson diagnosed intra-articular left hip pain that was confirmed by a diagnostic injection. After the injection, Fentress had no groin pain from walking and walked without a limp. Dr. Nelson opined that Fentress' "current pain dates back to her original injury" and that "[i]f we do not seek alternative treatment options, she would have continued lifelong pain with severe limitations." Because of the relief after the pain injection, Dr. Nelson recommended a revision hip surgery because the injection indicated a clear source of intra-articular pain.

Following the October 22, 2018, hearing on MMI, the compensation court gave the parties until October 29 to submit written closing arguments. On October 25, Westin, identifying itself as "Defendants" filed pleadings entitled "Withdrawal of Motion to Terminate" and "Withdrawal of Motion to Determine," the substance of which had been the subject of the hearing.

The compensation court ruled that Westin would not be permitted to withdraw the issue of whether Fentress had reached

MMI. In its ruling, the compensation court referred to Neb. Rev. Stat. § 48-177(2) (Cum. Supp. 2018). The court ordered the parties to submit briefs. Westin filed a written objection to the court's decision disallowing withdrawal of its motions. As noted, on November 19, 2018, the compensation court held a hearing on Fentress' motion for attorney fees.

On January 15, 2019, the compensation court filed an order in which it made detailed factual findings and awarded temporary total disability and attorney fees to Fentress. With regard to injuries to her mental health, the court found Fentress had reached MMI but needed future medical treatment and medical care to maintain this level. See Neb. Rev. Stat. § 48-120 (Cum. Supp. 2018). With regard to the hip injury, the court found Fentress had not reached MMI and was entitled to future medical care. See *id*.

The compensation court explicitly rejected Dr. Aviles' opinion that Fentress was lying and malingering, because it found this later opinion contradicted earlier office notes documenting failed surgery. In its order, the court noted, "As you can tell from the statements signed by Dr. Aviles on October 18, 2018[,] he was very unhappy that someone would record conversations during an examination."

The compensation court found that Fentress was still in pain and that the intra-articular injection Dr. Nelson had given Fentress gave her relief and had not been previously attempted. The order found Fentress' treatment with Dr. Nelson was compensable and ordered Westin to compensate Fentress for continued future treatment with Dr. Nelson.

Finally, the court ordered Westin to pay Fentress' attorney fees in the amount of $2,500 incurred, because Westin failed to timely make required medical payments. See Neb. Rev. Stat. § 48-125 (Cum. Supp. 2018). The order incorporated the "reason for the determination . . . and the amount due [Fentress] for attorney's fees [as] dictated to the court reporter at the time of the hearing on November 19, 2018."

Westin appeals, and Fentress filed a purported cross-appeal challenging the accuracy of certain calculations regarding benefits.

ASSIGNMENTS OF ERROR

On appeal, Westin claims that the compensation court erred when it (1) denied Westin's motions to withdraw its previously filed motions, (2) admitted recordings taken by Fentress of her consultation with her physician, (3) found Fentress' treatment with Dr. Nelson compensable, (4) awarded Fentress temporary total disability, (5) failed to analyze whether Fentress suffered an independent intervening event, and (6) failed to specifically discuss the reasons supporting its award of attorney fees to Fentress.

[1] Fentress attempts to raise a cross-appeal related to the calculation of certain temporary benefits and penalties, but failed to separately assign errors as the basis of her purported cross-appeal. As a threshold matter, we must determine what assignments of error were properly raised and argued on appeal. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014) of our court rules of appellate practice provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

[2,3] Thus, the cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts. *In re Estate of Graham, supra*. Although a subheading in Fentress' brief states that the compensation court erred in not ordering payment of underpaid temporary indemnity benefits and a waiting-time penalty, this is not an acceptable substitute for a proper assignment of error. See

*In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). When a brief of an appellee fails to present a proper cross-appeal pursuant to § 2-109, as in this case, we decline to consider its merits. See *In re Estate of Graham, supra*.

## STANDARDS OF REVIEW

[4,5] A judgment, order, or award of the compensation court may be modified, reversed, or set aside by an appellate court only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016).

[6] The meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id*.

[7] Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

[8,9] Whether a worker in a Nebraska workers' compensation case is totally disabled is a question of fact. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Id*.

ANALYSIS

*Denial of Westin's Motion to Withdraw*
*Motion to Determine MMI*
*Was Not Error.*

Central to Westin's appeal is its contention that it was improper for the compensation court to rule on a motion after Westin had attempted to withdraw that motion; Westin specifically refers to its attempted withdrawal of its previously filed motion to determine MMI. As noted above, Westin moved to withdraw its motion to determine MMI following the evidentiary hearing on this very issue. As explained below, we conclude that Westin's motion to withdraw was subject to the ordinary procedure pertaining to motion practice, see Neb. Rev. Stat. § 48-162.03(1) (Cum. Supp. 2018), and we review the compensation court's ruling thereon under the standards of review recited above. Although our reasoning differs from that of the compensation court, we find no error with respect to the compensation court's ruling which denied Westin's motion to withdraw. Accordingly, we find no merit to this assignment of error.

In its ruling in which it denied Westin's motion to withdraw its previously filed motion to determine MMI, the compensation court relied on § 48-177. Westin contends that § 48-177 is the controlling statute, but maintains that the compensation court misapplied it.

Section 48-177 is entitled "dismissal." Section 48-177(1) refers to the filing of "a petition or motion," sometimes referred to as "the cause," and § 48-177(2) provides that a "cause may be dismissed . . . (a) by the plaintiff . . . or (b) by the compensation court upon a stipulation."

Fentress has been denominated "plaintiff" throughout the years this case has been pending. And because permanency has not been determined, the matter is not closed or dismissed. Notwithstanding these facts, the compensation court reasoned that for purposes of § 48-177, the "defendants" were "'the plaintiff'" and their "withdrawal of motion" sought a dismissal.

[10] The compensation court's strained interpretation of the words of § 48-177 demonstrates that the statute is not applicable to the motion at issue, which was filed in an ongoing case. We have viewed § 48-177 as a voluntary dismissal of a case which "removes the case from the [compensation] court's docket." *Knapp v. Village of Beaver City*, 273 Neb. 156, 162, 728 N.W.2d 96, 100 (2007). Westin's motion did not seek dismissal, nor did the compensation court's ruling thereon dismiss the matter. Given the above, we conclude that § 48-177 does not control the analysis.

[11] The motions filed by Westin in this case related to a pending case in which a petition had already been filed by Fentress. Westin's motion to determine MMI was encompassed by the motion practice under the broad language of § 48-162.03(1), which allows any party to a suit or proceeding to make "any motion" to the compensation court, "including, but not limited to, motions for summary judgment or other motions for judgment on the pleadings but not including motions for new trial." We have stated that this language "grants the court broad authority to rule on any motion except motions for new trial and motions for reconsideration." *Cruz-Morales v. Swift Beef Co.*, 275 Neb. 407, 413, 746 N.W.2d 698, 703-04 (2008). Withdrawal of a motion under § 48-162.03(1) would not remove the case from the compensation court's docket. Compare *Knapp, supra* (interpreting § 48-177). Instead of relying on § 48-177, we believe the ruling denying Westin's motion to withdraw its motion to determine MMI is controlled by reference to § 48-162.03(1).

Because Westin's motion to withdraw its motion for a determination of MMI is governed by ordinary motion practice, we apply the standard of review required by § 48-185. We may modify, reverse, or set aside such an order only on the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award;

or (4) the findings of fact by the compensation court do not support the order or award. *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016). In the present circumstance, we apply the standard of review numbered "(3)" above; that is, we must determine whether the record is sufficient to warrant the order.

Westin contends that it needed additional time for discovery after the hearing was held on its motion to determine MMI. The record shows that despite a prior award in favor of Fentress, Westin was denying compensability and Fentress would have been prejudiced by a further delay in receipt of medical and disability benefits if Westin's efforts to postpone a ruling on MMI had been successful. Fentress notes that the issue of MMI was unresolved by the award which resulted from her initial petition. Fentress contends that allowing Westin to withdraw its motion would postpone an inevitable determination of MMI and require additional court resources and litigation by the parties. We observe that although not controlling, Westin's motion to withdraw its motion to determine MMI after the evidentiary hearing on MMI would tend to defeat the prohibition against motions for new trials. See § 48-162.03(1). We find sufficient evidence in the record to support the compensation court's order which denied Westin's request to withdraw its motion to determine MMI.

*Admission of Audio Recording*
*Was Not Error.*

Westin claims that the compensation court erred when it admitted exhibit 85, a recording of the consultation Fentress had with her orthopedic doctor, Dr. Aviles, on May 2, 2018. Westin contends that this recording is not the best evidence of Dr. Aviles' opinions and that allowing "surreptitious" recordings of health care providers can have a chilling effect on physicians treating workers' compensation patients, because "[i]t is probably safe to assume most physicians don't appreciate being secretly recorded . . . ." Brief for appellants at 15.

[12] The Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence. Neb. Rev. Stat. § 48-168 (Reissue 2010); *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). Given the beneficent purposes of workers' compensation law, a compensation court can admit evidence in order to investigate cases in the manner it judges is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act. See *Bower, supra*. As noted above, we review the admission of evidence by the Workers' Compensation Court for abuse of discretion. See *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). And, as related to the current appeal, we recognize that we have long approved the admission of surveillance videotapes in workers' compensation cases. *Brock v. Dunning*, 288 Neb. 909, 854 N.W.2d 275 (2014). See, e.g., *Harpham v. General Cas. Co.*, 232 Neb. 568, 441 N.W.2d 600 (1989).

Here, Fentress laid foundation for exhibit 85 by testifying in her deposition and at trial that she took her cell phone to the appointments with Dr. Aviles and recorded their exchange, because she did not want to forget the content of the visit. Fentress explained that she sometimes could not remember physicians' instructions, so she used her cell phone to record these conversations and make it easier to remember and, in addition, because of a prior substance abuse issue, to share with her sponsor. Fentress stated that she set her cell phone on a desk, in the open. Westin and Dr. Aviles were able to review these recordings, and thus, Westin had the opportunity to respond to Fentress' recording and place responsive contrary evidence before the court. In fact, Westin's evidence, including the October 18, 2018, statement of Dr. Aviles, referred to the recording in exhibit 85. Thus, exhibit 85 served to establish a foundation for subsequent exhibits. Admission of exhibit 85 was not an abuse of discretion.

*Compensability of Dr. Nelson's*
*Fees Was Not Error.*

Westin claims the compensation court erred when it ordered Westin to pay for past and future medical visits with Dr. Nelson, an orthopedic specialist not selected by the employer or referred by a physician initially designated under the Nebraska Workers' Compensation Court rules of procedure. See Workers' Comp. Ct. R. of Proc. 50(A)(6) (2018). Westin contends that this aspect of the order was an impermissible rule 50 physician change and not compensable. We do not agree.

[13] Under § 48-120(2)(e) and rule 50(A)(6), an employee must generally follow a chain of referral and provide notice to the employer before changing primary treating physicians. However, if an employer denies compensability for an injury, the employee can avoid the chain of referral and has a right pursuant to § 48-120(2)(a) and rule 50(A)(6) to select his or her own physicians for treatment and later seek compensation. In *Clark v. Alegent Health Neb.*, 285 Neb. 60, 68, 825 N.W.2d 195, 202 (2013), we considered the consequences of denial of compensability and stated:

> Larson's Workers' Compensation Law discusses the circumstances which effectuate an employer's "denial of compensation" under statutory workers' compensation provisions similar to those of Nebraska: "The central rule defining the circumstances under which a claimant may on his or her own initiative incur compensable medical expense may be put as follows: If the employer has sufficient knowledge of the injury to be aware that medical treatment is necessary, it has the affirmative and continuing duty to supply medical treatment that is prompt, in compliance with the statutory prescription on choice of doctors, and adequate; if the employer fails to do so, the claimant may make suitable independent arrangements at the employer's expense."

Although Fentress had a prior award finding she had compensable injuries and was entitled to reasonable and necessary future medical care, Westin discontinued additional medical care in 2018. Fentress testified that she attempted to return to a previously authorized treating physician's office for an appointment in September 2018, but Westin did not authorize the visit. There was evidence in the record that Westin had denied compensability to physicians within the rule 50(A)(6) chain of referral, and thus Fentress could seek potentially compensable treatment with a physician of her choosing. This subsequent treatment was, as we discuss below, properly deemed compensable by the compensation court, and therefore, Westin was duly found liable for Dr. Nelson's medical treatment of Fentress. The compensation court's order permitting Fentress to continue treatment with Dr. Nelson was not in error.

*Award of Temporary Total*
*Disability Was Not Error.*
Westin claims that the compensation court erred when it found Fentress was totally disabled and awarded Fentress temporary total disability benefits. On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). Because we determine that the findings of the compensation court were not clearly wrong, we reject this assignment of error.

Westin contends that the record lacks adequate evidence of work restrictions. However, we find support in the record for the compensation court's determination pertaining to work restrictions, including the valid FCE performed by a medical clinic on May 22, 2018, to which the compensation court referred in its order. The FCE showed Fentress had the ability to work in the medium physical demand level but with specific restrictions. Fentress testified that her condition had worsened in the time between the FCE and the hearing. Additionally,

Dr. Nelson had recommended that Fentress have further pain injections and surgery and that Fentress use a cane to assist her when walking to minimize limping and prevent the development of other issues. We are aware that Westin presented the contrary opinion of Dr. Aviles, who stated that Fentress could work full duty without restrictions. The compensation court specifically disregarded this opinion.

Where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workers' Compensation Court. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). Viewed in the light most favorable to Fentress, the compensation court's factual determination that Fentress was temporarily totally disabled under § 48-185 is supported by the record and not clearly wrong.

*Independent Intervening Event Did*
*Not Relieve Westin of Liability.*

Westin claims that the compensation court reversibly erred when it failed to find that Fentress suffered an independent intervening event that relieved Westin from further liability. The compensation court's factual findings on causation implicitly disagree with this contention, and we reject this assignment of error.

[14-16] In workers' compensation cases, an independent intervening cause, as the proximate cause of an injury, is, generally, a matter of defense and, as such, must be proved by the party asserting that defense. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). The mere possibility of an independent intervening cause does not relieve an employer from liability for an employee's otherwise compensable claim for workers' compensation and benefits. *Id*. A defendant asserting a break in causation by an independent intervening cause must prove the break in causation by competent medical testimony if the claimed

injuries are of such a character that scientific testimony is required to prove their validity. See *Mendoza, supra*.

Although an incident was documented in Fentress' medical reports to the effect that Fentress "tripped . . . but did not fall all the way," Westin did not produce expert opinions showing permanent damage caused by Fentress' June 30, 2018, stumble in the park. The compensation court order noted treatment given on July 6, discussing the new pain from Fentress' stumble, and elsewhere, the compensation court found that "[t]here are no records submitted showing a further examination related to the fall at the park." Fentress testified that the pain from the stumble was of a different nature and "continued to hurt for a week."

By virtue of its findings, the compensation court implicitly found against Westin on its defense that Fentress suffered an independent intervening cause, when it noted the lack of evidence related thereto and expressly agreed with opinions of Dr. Nelson regarding causation and the necessity of continuing medical treatment occasioned by the work-related injury. We cannot say that the compensation court's order authorizing temporary total disability benefits was error.

*Award of $2,500 Attorney Fees
to Fentress Was Not Error.*

Westin argues that the award of attorney fees to Fentress in the requested amount of $2,500 was unreasonable because the compensation court did not detail how it arrived at that figure. We find no merit to this assignment of error.

The compensation court found that Westin failed to promptly pay certain medical payments ordered by the court within 30 days and that Westin became liable for attorney fees under § 48-125(4)(a). Westin's claim of error is with regard to the amount of the fees.

[17] A determination of an award of attorney fees under § 48-125 must be calculated on a case-by-case basis. *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014).

Determining the amount for the fees is necessarily a question of fact that requires a factual determination on several factors. *Id*.

The record shows that Fentress presented evidence of her counsel's efforts to seek payment of the past-due bills, including at least five requests to Westin and counsel's participation in motion practice and a hearing. At the hearing on attorney fees, the compensation court stated that "if [the attorney] wants $2,500, I really don't see why she doesn't get the 2,500 because of the detail that they give me. I mean, this is unbelievable detail that we receive from this office regularly." We give deference to the factual findings of the compensation court. *Id.* Although it would be the better practice for the written order to recite the factors on which it relied, given its recitals at the attorney fees hearing in this case, we find that the compensation court did not err when it awarded the full amount of attorney fees requested by Fentress.

## CONCLUSION

For the reasons recited above, the compensation court did not err when it denied Westin's motion to withdraw its previously filed motion to determine MMI after the hearing on MMI; admitted Fentress' recording of the consultation with a physician; and awarded Fentress medical treatment, temporary total disability, and attorney fees. Accordingly, we affirm.

Affirmed.